Ivey **BURKETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–04–00362–CR.

Court of Appeals of Texas, San Antonio.

June 15, 2005.

Rehearing Overruled Aug. 4, 2005.

Warren Alan Wolf, San Antonio, for appellant.

Laura Burton Bates, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice (concurring in the judgment only), SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Appellant, Ivey Burkett, was convicted of driving while intoxicated and assessed a ten year sentence and a $1000 fine. Burkett raises eight issues on appeal. We have reviewed all claims of error and conclude that no harmful error occurred. Accordingly, we affirm the trial court's judgment.

### BACKGROUND

On June 1, 2003, at approximately 11:00 p.m., Santiago Reyes was driving on an access road in Bexar County, Texas, when he stopped at a red light. Reyes heard the sound of screeching brakes and within seconds, the right side of his stopped vehicle was sideswiped by a vehicle driven by the appellant, Ivey Burkett.

Reyes turned and saw Burkett pull into a parking lot. Reyes followed, and the men exited their vehicles to exchange insurance information. Burkett admitted he was at fault in the accident. According to Reyes, Burkett seemed sluggish, tired, and "kind of intoxicated." Burkett leaned against his vehicle for support and spoke with slow speech. Reyes testified he had to listen very carefully to understand what Burkett was saying.

Officer John Yarborough was the first police officer to arrive at the scene of the accident. According to Yarborough, Burkett smelled of alcohol, his speech was slurred, and he was having difficulty keeping his balance. Yarborough suspected Burkett was intoxicated, so he called for assistance because he is not trained to administer field sobriety tests. In his police report, Yarborough noted Burkett was unemployed due to disability. Yarborough concluded the accident had been caused by Burkett's failure to control the speed of his vehicle, alcohol consumption, and driver inattention. When asked by defense counsel why Yarborough did not write in his report the accident was caused by Burkett's intoxication, Yarborough stated he had not formed any conclusion about Burkett's intoxication because he is not trained to administer field sobriety tests. Yarborough made these notations in his report before he was aware of Burkett's performance on the field sobriety tests.

Officer Michael Starnes responded to Yarborough's call for assistance and arrived at the scene of the accident within five minutes. Yarborough informed Starnes he suspected Burkett was intoxicated. Starnes made contact with Burkett and asked him to perform field sobriety tests. While explaining the tests to Burkett, Starnes noticed that Burkett was unsteady on his feet and had a strong smell of intoxicants on his breath, slurred speech, and bloodshot eyes. Burkett did not inform Starnes he suffered from any medical conditions that would preclude him from performing the field sobriety tests. Burkett stated he was not wearing contact lens, and verified he had not suffered any head injuries in the car accident.

In a smoothly paved, well-lit parking lot, Starnes administered three standardized field sobriety tests to Burkett: the horizontal gaze nystagmus (HGN) test; the walk and turn test; and the one leg stand test. Burkett exhibited all six clues on the HGN test, indicating he was alcohol-impaired. Starnes then administered the vertical gaze nystagmus (VGN) test to determine if Burkett had been drinking excessively. Burkett did not exhibit vertical nystagmus. Starnes explained to the jury that the VGN test does not establish whether someone is intoxicated, but it can establish whether a person has consumed an excessive amount of alcohol.

Burkett next failed the walk and turn test, exhibiting six out of eight possible clues. Starnes concluded Burkett failed the test because he was unable to follow the instructions, could not keep his balance during the instruction period, did not touch his heel to toe, had to raise his arms for balance, turned to the wrong side, completed only eight of the nine steps walking forward, and completed only three of the nine steps walking back.

Lastly, Burkett failed the one leg stand test, exhibiting several clues: he used his arms for balance; swayed back and forth; and had to put his foot down four times. Based on his observations and Burkett's poor performance on the field sobriety tests, Starnes concluded Burkett was intoxicated and had lost the normal use of his mental and physical faculties. Starnes handcuffed Burkett and called for an officer to process Burkett for DWI.

Officer Rodney Olivarez, who was dispatched to the scene of the accident to take Burkett into custody, testified that Burkett had bloodshot eyes, slurred speech, and a strong smell of intoxicants on his breath. Olivarez noted in his police report Burkett had a visible injury, but did not indicate the specific injury, and could not remember at trial. Before taking Burkett into custody, Olivarez administered the HGN field sobriety test to Burkett and observed six clues.

At the magistrate's office, Burkett refused to take the intoxilyzer test and also refused to give a blood sample. Because Burkett refused to take the intoxilyzer test, Olivarez took him into a room where Burkett could be videotaped. Burkett stated he had a bad knee. When Burkett was asked to perform field sobriety tests on video, he refused.

Burkett's defense at trial was disability. The defense put on two witnesses to testify about Burkett's physical and mental health conditions: Dr. Delia Bullock, and James Burkett, the appellant's brother.

Dr. Bullock, who began treating Burkett for AIDS in 1999, testified extensively about his medical condition. Burkett has had a severe infection in his cervical vertebrae and underwent surgery to fuse the vertebrae in his neck. As a result of the surgery, Burkett has difficulty turning his head from side to side and tipping his head back. Burkett suffers from age-related degenerative joint disease and osteoarthritis in his lower back. This has left him with chronic back pain and causes him to have difficulty ambulating. Burkett has pulmonary problems and abnormal lungs, so he does not have good exercise tolerance.

Burkett also suffers from abnormal liver functions due in part to Hepatitis C, a liver disease. After her initial visit with Burkett, Dr. Bullock warned him he needed to stop consuming alcohol, and his liver function has improved. Despite the improvement in his liver function, Dr. Bullock could not verify whether Burkett has discontinued consuming alcohol, or whether he consumed alcohol the night in question. Burkett also suffered a pelvic fracture prior to 2003, an infection in one of his heart valves, an illness called "empyema" (a collection of fluid around the lung), and cerebral atrophy. Dr. Bullock testified that many of Burkett's conditions are chronic.

Dr. Bullock also testified that Burkett is odd in his behavior and demeanor. She stated that he is difficult to understand because he does not have any teeth and speaks with slurred speech. Burkett also walks with an unsteady gait—according to Dr. Bullock, "you're almost fearful he's going to fall over." Due to Burkett's peculiar demeanor, Dr. Bullock suspected he was intoxicated on a few occasions and ordered alcohol studies on him, which came back negative. Dr. Bullock observed the police videotape of Burkett and stated that is how he speaks and ambulates when she has seen him for his check-ups. In her opinion, the videotape did not indicate Burkett had lost the normal use of his mental and physical faculties. Dr. Bullock admitted that had she known Burkett caused a car accident, appeared intoxicated to police officers, and refused to take an intoxilyzer test, her opinion about Burkett's impairment due to alcohol consumption could change. Dr. Bullock testified that if Burkett consumed alcohol, he would be even more impaired than he is normally.

Dr. Bullock also testified that a person with Burkett's medical conditions can develop red, glassy eyes, but to her knowledge, Burkett has never suffered from that eye condition. She also stated that the physical conditions Burkett suffers from would not have caused him to have an odor

of intoxicants on his breath, and verified the HGN field sobriety test is a reliable indicator of whether someone is intoxicated.

Burkett's brother James testified that Burkett has the AIDS virus, does not have any teeth, lives with one lung, and suffers from heart problems. While they were growing up, James noticed Burkett suffered from "severe abnormalities" mentally. According to James, Burkett saw a specialist when he was 12 or 13 for his mental illness and received thirty shock treatments. James estimates Burkett has suffered from his medical conditions for over a decade. James watched the videotape of Burkett that was taken the evening of his arrest, and testified the manner in which Burkett spoke and ambulated were normal.

The jury found Burkett guilty of the charged offense, and also found both enhancement paragraphs true. During the punishment phase of the trial, the jury heard testimony that Burkett received prior convictions for assault with intent to rape in 1973, for DWI in 1994 and 1995, and for possession of cocaine in 1995. There was also testimony that Burkett damaged his mother's home in August 2001; abused drugs and alcohol in his mother's home in September 2001; admitted in October 2001 to being a cocaine user for twelve years with occasional marijuana use; was taken to the hospital in May 2003 for alcohol and cocaine intoxication · and violent behavior; and was admitted to the hospital on June 3, 2003 (two days after his arrest for DWI in the instant case) for cocaine-induced hallucinations. The jury sentenced Burkett to ten years imprisonment and assessed a $1000 fine.

### FACTUAL SUFFICIENCY

▆ In his first issue, Burkett contends the evidence presented at trial is factually insufficient to support his conviction for DWI.

▆ In a factual sufficiency review, we view all of the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim. App.2004), *cert. denied*, — U.S. —, 125 S.Ct. 1697, 161 L.Ed.2d 528 (2005) (citing *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004)). The question under a factual sufficiency challenge is whether, considering all of the evidence in a neutral light, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484. Evidence can be factually insufficient if the evidence is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence exists that is strong enough that the beyond-a-reasonable doubt standard could not be met, so the verdict should not stand. *Id.* at 485.

▆ In performing a factual sufficiency review, we are to give deference to the fact-finder's determinations, including determinations involving the credibility and demeanor of witnesses. *Id.* at 481; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim. App.1997). We may not substitute our judgment for that of the fact finder's. *Zuniga*, 144 S.W.3d at 482. We will not set aside the judgment unless the evidence supporting the verdict is so weak as to be clearly wrong and manifestly unjust. *Id.* at 481. A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Id.*

To support Burkett's conviction for felony DWI, the State was required to prove

that Burkett operated a motor vehicle in a public place while intoxicated and that Burkett had two prior convictions for DWI. Tex. Pen.Code Ann. §§ 49.04(a) & 49.09(b)(2) (Vernon 2003 & Supp.2004–05). Burkett does not contest the sufficiency of the evidence supporting his two prior DWI convictions. The only element of the offense he contests is intoxication. Under the Penal Code, intoxication may be proven when the evidence shows that the defendant has lost the normal use of his mental *or* physical faculties by reason of alcohol consumption. Tex. Pen.Code Ann. § 49.01(2)(A) (Vernon 2003) (emphasis added).

■ In conducting a factual sufficiency review, an appellate court must consider the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim.App.2003). At trial, Dr. Bullock testified that Burkett suffers from medical impairments that give the appearance of intoxication. Dr. Bullock testified that Burkett normally has slurred speech and an unsteady gait, which could provide an innocent explanation for the eyewitness testimony that Burkett exhibited those symptoms of intoxication. The jury heard testimony that Dr. Bullock thought Burkett was intoxicated during some of his hospital visits, during which his blood alcohol tests came back negative. Dr. Bullock and James both viewed the police videotape of Burkett and testified that Burkett did not appear differently in the video than he does when he is not intoxicated.

The first officer who observed Burkett in the field, Officer Yarborough, stated he could not determine if Burkett's symptoms of intoxication were due to intoxication or disability. Officer Olivarez also noted on his police report that he observed a visible injury on Burkett after the accident. The officers admitted in court that having back

problems and disabilities can, in some cases, cause a defendant to perform poorly on field sobriety tests.

There was considerable evidence supporting intoxication, however. Although Dr. Bullock testified that Burkett did not appear more impaired than usual in the police video, she also indicated Burkett, because of his disabilities, is more susceptible to impairment when he has consumed alcohol. Three police officers smelled a strong odor of alcohol on Burkett's breath, and none of Burkett's physical impairments can cause him to smell like alcohol. Although Burkett's physical impairments may explain why he performed poorly on two of the field sobriety tests, he was unable to follow simple instructions, indicating a degree of mental impairment. Burkett also exhibited six clues on the HGN test, which has been recognized as a reliable indicator of intoxication. *See Emerson v. State,* 880 S.W.2d 759, 768 (Tex. Crim.App.1994), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). Burkett verified he had not suffered any head injuries that could affect the reliability of the HGN test, and none of his physical impairments would have affected its accuracy. When the HGN test was conducted a second time by Officer Olivarez, Burkett again exhibited all six clues.

Burkett also refused to provide the police a specimen of his breath or a sample of his blood to determine his blood alcohol content (BAC). Burkett's refusal to take the intoxilyzer test implies he believed he would fail it because he thought he was intoxicated, and from such refusal, the jury may infer guilt. *See* Tex. Transp. Code Ann. § 724.061 (Vernon 1999) ("A person's refusal of a request by an officer to submit to taking of a specimen of breath or blood . . . may be introduced into evidence at the person's trial"); *Gaddis v. State,* 753 S.W.2d 396, 399 (Tex.Crim.App.1988) (the

jury may infer guilt from a defendant's refusal to take a breath test).

Viewing all of the evidence in a neutral light, we hold that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, or that Burkett's contrary evidence is so strong that the beyond-a-reasonable doubt standard could not have been met. *See Escamilla,* 143 S.W.3d at 817. Burkett's first issue is overruled.

### MEDICAL EXCUSE INSTRUCTION & "REASONABLY SOBER DRIVER" STANDARD

■ In his second and third issues, Burkett contends the trial court erred in denying his request for a medical excuse instruction, and a disabled individual should not be compared to a "reasonable, non-intoxicated" individual when disability has been raised by medical testimony. Burkett contends the jury was misled about the law and he was unable to argue medical disability in his closing argument and present a medical disability defense.

Burkett argues that the trial court erred in denying his medical excuse instruction. Prior to the reading of the jury charge, defense counsel orally proposed the following jury instruction:

> DEFENSE: Well, I propose and I would like this into the record and propose this—that it be—that it be added. That if the Defendant was—suffered from degenerative disk disease—lumbar cervical disorder, Hepatitis C, severe dentitis, HIV positive, at the time—cerebral atrophy—at the time and place in question, rather than being under the influence of alcohol, he would be not

guilty of the offense charged even if he was driving a motor vehicle.

> Therefore, if you find from the evidence that on the occasion in question, and at the time of the Defendant's arrest he was suffering from degenerative disk disease, lumbar cervical disorder, Hepatitis C, severe dentitis and cerebral atrophy, or if you have a reasonable doubt thereof, you will acquit the Defendant.
>
> COURT: Denied.

In *Giesberg v. State,* the Texas Court of Criminal Appeals held that any defensive theory not recognized or specifically labeled as either a defense or an affirmative defense by the Legislature does not warrant a separate instruction. 984 S.W.2d 245, 250 (Tex.Crim.App.1998), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999). Burkett's medical excuse instruction is not a statutorily-enumerated defense,[1] and merely serves to negate the impairment element of the State's case. Therefore, the trial court properly denied Burkett's requested instruction. *See Ortiz v. State,* 93 S.W.3d 79, 92 (Tex.Crim.App. 2002), *cert. denied,* 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003) ("[A] defensive instruction is not required when the issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the State's case"); *Giesberg,* 984 S.W.2d at 250. The trial court did not err in refusing Burkett's proposed instruction. We overrule Burkett's third issue.

■ In his second issue, Burkett argues that it is *per se* unreasonable to use an objective standard for intoxication when the defendant in a DWI case is disabled. Burkett contends the trial court erred by

---

1. The Texas Penal Code recognizes the general defenses of insanity, mistake of fact, mistake of law, intoxication, duress, entrapment, and age affecting criminal responsibility. Chapter Nine outlines justifications absolving

a defendant of criminal responsibility, such as public duty, necessity, self-defense, and defense of third persons. *See* TEX. PEN.CODE ANN. §§ 2.03 and 2.04; Chapters Eight and Nine (Vernon 2003).

permitting the State to compare him to a "reasonably sober driver," arguing that it is not a "reasonable person" listed in the indictment. Rather, the individual in the indictment is the particular defendant and his specific normal use of faculties. This argument was rejected in *Massie v. State*, however:

> We do not construe an allegation that appellant did not have normal use of his mental and physical faculties the same as an allegation that appellant did not have *his* normal use of his faculties. The former allegation does not require proof of the defendant's normal abilities. Rather, it means that the faculties which must be tested belong to the appellant. If there was evidence that appellant could not use his faculties on the occasion in question, in the manner in which the normal non-intoxicated person would be able to use his faculties, the evidence is sufficient to convict him unless the jury finds that his inability to perform on that occasion is not due to intoxicants (e.g. diabetes, epilepsy).

744 S.W.2d 314, 316 (Tex.App.-Dallas 1988, writ ref'd) (emphasis in original). Several courts of appeals have since adopted this holding. *See, e.g., Railsback v. State*, 95 S.W.3d 473, 484 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (holding that the State does not have to establish what the defendant's normal use of his faculties is in order to prove that he did not have normal use of his mental and physical faculties); *Fogle v. State*, 988 S.W.2d 891, 894 (Tex. App.-Fort Worth 1999, pet. ref'd) (same); *Reagan v. State*, 968 S.W.2d 571, 572 (Tex. App.-Texarkana 1998, pet. ref'd) (same).

In further support of his argument, Burkett cites our opinion in *Hernandez v. State*, in which we held:

> A defendant cannot be found to be intoxicated if he lacks the normal use of mental or physical faculties for a different reason, such as disability, illness, fatigue, stress, or clumsiness.

107 S.W.3d 41, 51 (Tex.App.-San Antonio 2003, pet. ref'd) (citing *Massie*, 744 S.W.2d at 316). Our ruling in *Hernandez* does not support Burkett's claim that an objective standard for intoxication is inappropriate for a disabled DWI defendant. To the contrary, as this court noted in *Hernandez*, the objective standard "is a correct statement of the law because it requires the jury to consider why the defendant does not have the normal use of faculties." *Id.* In *Hernandez*, as in the instant case, the jury heard testimony that the DWI defendant had trouble walking and keeping his balance even when he was not intoxicated, and thus appeared intoxicated even when he was sober. *Id.* We rejected the defendant's argument that the objective standard unreasonably compared him to a reasonable, non-intoxicated person, holding:

> [E]ven applying the objective standard, an individual can be found intoxicated *only* if he lacked the normal use of faculties by reason of the introduction of a substance into his body. The subjective standard, by comparison, places an unnecessary burden on the State to present evidence of the defendant's own non-intoxicated faculties.

*Id.* (Emphasis added).

In this case, we hold that it was not *per se* unreasonable to use an objective standard for intoxication. We do not agree that Burkett was unable to present a defense.[2] The jury heard testimony

---

2. During oral argument, Burkett brought up specific instances where the trial court sustained the State's objections to his arguments.

The State objected to defense counsel's comment during voir dire that the State was required to prove Burkett's normal use of his

that Burkett failed three field sobriety tests that a reasonable, non-intoxicated person would have passed. Burkett presented evidence that his poor performance on the field sobriety tests could have been due a reason other than intoxication, *i.e.* his disabilities. Dr. Bullock discussed Burkett's physical impairments and how they would prevent him from adequately performing field sobriety tests that reasonable sober individuals can pass. The jury sifted through the testimony, weighed the evidence, and apparently concluded Burkett lost the use of his faculties due to intoxication. The jury's conclusion that intoxication rather than disability caused Burkett to lose the use of his faculties is supported by evidence that Burkett smelled strongly of intoxicants; failed the HGN field sobriety test each time it was administered; could not follow instructions; and refused to take the intoxilyzer test, give a breath sample, or perform field sobriety tests on video. We overrule Burkett's third issue.

### IMPROPER JURY ARGUMENT

■ In his fourth issue, Burkett contends the trial court erred in overruling the following objection to the State's argument during closing argument:

> STATE: Look at the totality of everything you heard and saw and the credibility of the witnesses versus this-this man, this **leech on society.**

DEFENSE: Objection; improper argument.

COURT: Overruled.

Burkett contends this argument of the State is harmful and requests a new trial.

■ The general areas of proper jury argument are summation of the evidence, reasonable deduction from the evidence, answer to the argument of opposing counsel, and plea for law enforcement. *McFarland v. State,* 845 S.W.2d 824, 844 (Tex.Crim.App.1992), *overruled on other grounds by Bingham v. State,* 915 S.W.2d 9, 14 (Tex.Crim.App.1994). If the argument exceeds permissible bounds, no reversible error occurs unless the argument affects the accused's substantial rights. Tex.R.App. P. 44.2(b); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). To determine if the State's improper argument affected Burkett's substantial rights, we look to three factors: 1) the severity of the misconduct; 2) measures adopted to cure the misconduct; and 3) the certainty of the conviction absent the misconduct. *Mosley,* 983 S.W.2d at 259.

We do not condone the State's comment, and the objection to the comment should have been sustained. We are constrained to note, however, that calling Burkett a "leech on society," though reprehensible, is similar to other improper jury argu-

faculties. The State also objected to defense counsel's argument to the jury during closing that the relevant issue for them to consider was what should be considered "normal" for Burkett in terms of his mental and physical faculties. The State objected that defense counsel's comment was not the law given to the jury in the court's charge. The State's objections were sustained. Under *Massie,* we cannot conclude the trial court erred in sustaining these objections. *Massie,* 744 S.W.2d at 316 (it is not the State's burden to prove what the defendant's normal faculties are in order to prove he did not have normal use of his mental and physical faculties). We note that the State did not object to defense counsel's recitation of the facts and his argument that the facts supported a conclusion that Burkett's symptoms of intoxication were due to a reason other than alcohol consumption. The statements the State objected to were not discussions of the facts; the State objected to defense counsel's attempts to introduce a legal instruction that had not been submitted to the jury.

ments that have been held harmless. *See, e.g., Burns v. State,* 556 S.W.2d 270, 285 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977) (court held that the evidence justified the prosecutor's comment that the defendant was an "animal"); *Hernandez v. State,* 791 S.W.2d 301, 307 (Tex.App.-Corpus Christi 1990, pet. ref'd) (prosecutor's reference to defendant as "scum and goat" was improper, but not reversible); *Norwood v. State,* 737 S.W.2d 71, 74 (Tex. App.-Houston [14th Dist.] 1987, pet. ref'd) (prosecutor's comment that defendant was "animal" was error, but not reversible). The first factor of the harm test weighs in Burkett's favor. The second factor also weighs in Burkett's favor because no curative action was taken. Nevertheless, the third factor weighs heavier in the State's favor. Absent the State's comment, it cannot be said that the outcome of the trial would have been different given the State's evidence of Burkett's impairment due to alcohol consumption. Therefore, we conclude that Burkett's substantial rights were not affected by the State's improper comment to the jury. We overrule Burkett's fourth issue.

### IMPROPER JURY ARGUMENT: SENTENCING PHASE

■ In his fifth issue, Burkett contends the trial court erred in failing to instruct the jury to disregard the State's argument during closing arguments that "when a defendant goes to prison, he's going to receive all the free medical care he likes." Burkett objected to the statement, and the court sustained his objection because the State's argument was outside the record. The court denied Burkett's instruction to disregard.

The State argues the comment was a proper response to argument of defense counsel. We disagree. Defense counsel

mentioned during his argument that Burkett is disabled but never discussed medical care. Therefore, we must decide whether Burkett was harmed by the improper argument.

■ Improper jury argument is non-constitutional error. TEX.R.APP. P. 44.2(b); *Mosley,* 983 S.W.2d at 259. Rule 44.2(b) provides that a non-constitutional error "that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). In determining whether the defendant's substantial rights have been affected, we balance the following factors: 1) the severity of the misconduct (prejudicial effect); 2) curative measures; and 3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App. 2004) (citing *Martinez v. State,* 17 S.W.3d 677, 693–694 (Tex.Crim.App.2000)) (setting forth the balancing test to be conducted when defendant complains of improper jury argument in the punishment phase of a non-capital trial).

The first factor concerns the severity of the misconduct and focuses on the prejudicial effect of the comment. *Id.* at 78–79. Throughout its closing argument, the State discussed Burkett's prior felony convictions, volatile demeanor, and ongoing problems with substance abuse. The complained-of comment was one sentence out of an argument that spanned four pages. The State's comment that Burkett would receive free medical care in prison is relatively mild. The second factor requires little analysis because there was no curative instruction. We note that the State did nothing to emphasize the comment made. This factor does not weigh heavily against the State. The third factor, however, weighs heavily in the State's favor. This was Burkett's third conviction for DWI; he had prior felony convictions for

cocaine possession and assault with intent to rape; he was a chronic substance abuser and exhibited volatile behavior at home. We can say with fair assurance that absent the State's comment, the jury would have assessed the same punishment, *i.e.* a ten-year sentence and $1000 fine. Given the State's brief comment and the evidence supporting the ten-year sentence, we conclude the error was harmless. Burkett's fifth issue is overruled.

## COMMITMENT QUESTIONS

In his sixth and seventh issues, Burkett contends the trial court improperly permitted the State to ask a commitment question during voir dire, and erred in sustaining the State's objection to his commitment question.

 The trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim.App.2002). Therefore, appellate courts should not disturb a trial court's ruling on the propriety of a particular question during voir dire absent an abuse of discretion. *Id.* A trial court abuses its discretion if it prohibits a proper question regarding a juror's views on an issue applicable to the case. *Howard v. State,* 941 S.W.2d 102, 108 (Tex.Crim.App.1996), *cert. denied,* 535 U.S. 1065, 122 S.Ct. 1935, 152 L.Ed.2d 840 (2002). Additionally, a trial court abuses its discretion if it allows a question that attempts to commit the juror to a particular verdict based on a set of circumstances analogous to the case in question. *See Atkins v. State,* 951 S.W.2d 787, 789 (Tex.Crim.App.1997).

In *Standefer v. State,* the Texas Court of Criminal Appeals articulated a specific test for determining when a voir dire question calls for an improper commitment. 59 S.W.3d 177, 179–184 (Tex.Crim.App.2001). First, trial courts must determine whether a particular question is a commitment question. *Id.* at 179. A commitment question is a question that "commit[s] a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Id.* If the court determines that a particular question is a commitment question, the court must then decide whether the question gives rise to a valid challenge for cause. *Id.* at 181–82. If the question meets the challenge for cause requirement, the court must then determine whether the question includes only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.*

As summarized by the court in *Standefer:*

> So, the inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts—and only those facts—that lead to a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no", then the question is an improper commitment question, and the trial court should not allow the question.

*Id.* at 182–83. We now review the questions at issue under these guidelines.

### A. "ONE WITNESS" QUESTION

 During voir dire, the State posed the following question to the jury:

> If the State proves to you every element of driving while intoxicated, and you believe that the State has met every element of the offense through the testimony of one witness, beyond a reasonable doubt, could you convict the Defendant based on that one witness's testimony, or would you require more?

Defense counsel objected to the question as an improper commitment question, and the court overruled the objection. The State proceeded to ask all the jurors the

same question. Defense counsel continued to object, but the trial court refused to rule on his subsequent objections.

■■■■■ The State concedes that the question posed by the State constituted a commitment question. Therefore, we must determine whether the question led to a valid challenge for cause. The State may challenge a juror for cause when the juror would hold the State to a higher standard than "beyond a reasonable doubt." *Coleman v. State*, 881 S.W.2d 344, 360 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995). Consequently, a prospective juror is properly subject to challenge for cause if he indicates that he could not convict based on the testimony of one witness, even if he believed that witness beyond a reasonable doubt. *See Castillo v. State*, 913 S.W.2d 529, 533 (Tex.Crim.App.1995). However, a prospective juror is not challengeable for cause merely by setting his or her threshold for reasonable doubt higher than the minimum required by law, *e.g.*, a prospective juror who would require the testimony of more than one witness in order to be convinced beyond a reasonable doubt. *See id.*

In this case, the State was entitled to inquire about whether a prospective juror could abide by the standard of proof set by the law or if the juror would hold the State to a higher standard. *See id.* at 533–35. A response indicating the juror would hold the State to a higher standard would properly give rise to a valid challenge for cause. *See id.* at 533; *Harris v. State*, 122 S.W.3d 871, 881 (Tex.App.-Fort Worth 2003, pet. ref'd) ("How many people if selected on the jury could not find somebody guilty based upon the testimony of just one witness, even if they believed that one witness beyond a reasonable doubt?" was held to be a proper commitment question). Because the State's commitment question could lead to a valid challenge for cause, we proceed to the final step of analysis under *Standefer*.

Under *Standefer*, we must determine whether the State's question included only necessary facts. Here, the State's question did not attempt to commit the prospective jurors in conjunction with the specific facts of the case. The State's question was not unnecessarily fact intensive, and included only those facts necessary to determine whether a prospective juror was challengeable for cause. We hold that the trial court did not abuse its discretion by allowing the State to ask the prospective jurors whether they could convict based on the testimony of only one witness whom they believed beyond a reasonable doubt. The State's question was not designed to bind the prospective jurors to a position based on a particular set of facts, but sought to elicit whether the prospective jurors could impartially judge the credibility of a witness and follow the law. We overrule Burkett's sixth issue.

## B. "GUILT BASED SOLELY ON ARREST" QUESTION

■■■■■ In his seventh issue, Burkett contends the trial court abused its discretion in sustaining the State's objection to the following voir dire question posed by defense counsel:

> If a person is arrested for DWI, how likely or unlikely is it that that person is guilty of the charge of DWI? Would you say very likely, likely, somewhat likely, unlikely, or very unlikely? The mere fact that he is arrested for DWI, how many of you would say that if he is arrested for DWI, that it's very likely that he's guilty? Raise your hand.

Burkett's question meets the first *Standefer* prong: it is a question that requests the jurors to resolve their verdict after learning a specific fact. The State con-

tends Burkett's commitment question fails the second *Standefer* prong because not all answers to the question would give rise to a valid challenge for cause. We disagree. "An open-ended question can be a commitment question only if the question asks the prospective juror to set aside the hypothetical parameters for his decision-making." *Standefer*, 59 S.W.3d at 180. For a commitment question to be proper, one, not all, of the possible answers to the question must give rise to a valid challenge for cause. *Id.* at 182. If a juror had answered the defense's question affirmatively, the juror could be stricken for cause. *See* TEX.CODE CRIM. PROC. ANN. art. 35.15 (Vernon 1989) (a venire person may be stricken for cause if he or she has a preconceived notion of the defendant's guilt or innocence). Accordingly, the question is not impermissibly broad under *Standefer*.

█ However, even assuming the trial court erred in sustaining the State's objection, errors are reversible only if they are harmful. *See* TEX.R.APP. P. 44.2(b). An examination of the record reveals that any error was harmless. At the beginning of voir dire, the trial judge told the jurors:

The Defendant is presumed innocent. He sits here today cloaked with the presumption of innocence. Unless and until the State proves the essential elements of the indictment by bringing forth competent evidence pursuant to the rules of evidence here in a courtroom under oath, that presumption of innocence continues to be maintained. So, if right now you were asked to vote whether or not the Defendant is guilty or not guilty, what would your vote have to be?

All the prospective jurors stated their answer would be not guilty. Defense counsel informed the prospective jurors that "[i]t is not against the law in the State of Texas to drink an alcoholic beverage, and then get behind the wheel and drive home." Defense counsel asked the prospective jurors if any of them believed a person should not be allowed to drink an alcoholic beverage and then get behind the wheel of a vehicle and drive. Defense counsel also discussed the burden of proof and asked the prospective jurors if they would be able to follow the law: "Is anyone not going to hold the State to their burden of proving the case beyond a reasonable doubt of all the elements in this case?" The record reflects Burkett was able to intelligently exercise any challenges for cause. We overrule Burkett's seventh issue.

## HGN TEST RESULTS

█ In his eighth issue, Burkett argues the trial court erred in permitting the State to introduce evidence "equating the Horizontal Gaze Nystagmus (HGN) test to intoxication":

STATE: The six clues out of a possible total of six clues on the HGN, you testified earlier that indicated to you that he was intoxicated?

WITNESS: Yes. That's a very strong possibility. **Not only that he's intoxicated, but that he's intoxicated beyond the statutory limit.**

DEFENSE: Objection, your Honor. That's not proper. It goes beyond the scope of the task, what it indicates, and it's based on *Erdman v. State*, improper interpretation of the HGN test.

COURT: Based on what?

DEFENSE: The case of *Erdman v. State*, that the HGN test just shows the presence of alcohol. It doesn't show—there's no correlation to blood alcohol content.

STATE: I'm not asking the officer to quantify the percentage chance that the Defendant was intoxicated based on the six clues that he observed. I'm simply

asking him whether that indicated to him whether he was intoxicated or not, and that's what he answered yes. I'm not asking him for an actual percentage number, which is what he's objecting to.

COURT: I didn't hear him saying that.

DEFENSE: He was—if I may, he was starting to say—

COURT: What he said was—

DEFENSE:—he was past the—

COURT:—it would indicate he was intoxicated to the level he was not—did not have the normal use of his mental and physical faculties.

DEFENSE: I think he was saying that it was past the statutory limit, is what he was saying, and that's not proper, form.

COURT: Let me hear—what were you saying? Not only—

WITNESS: In my training, we were trained that, um, when someone has six clues, the likelihood of them being beyond the statutory limit was a certain percentage at -

DEFENSE: And I object, Judge.

COURT: Let him finish before we—

WITNESS: I cannot tell you at this point, quote, what the percentage chance is. I was basically just quoting the training I had received.

COURT: The training shows it's more likely than not, is that what you're saying?

WITNESS: Yes, sir.

COURT: Objection is overruled.

The State argues that Burkett waived this issue because defense counsel injected similar testimony during cross-examination when he commented in front of the jury that the HGN test is seventy-five percent accurate. We disagree. There is a distinction between the comment made by defense counsel and the State's expert's comments. Defense counsel was referencing the reliability of the HGN test itself; his statement was not an attempt to corre-

late Burkett's HGN test results to a specific BAC. Thus, we do not find waiver.

 We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). We will not reverse a trial court's ruling if it is within the "zone of reasonable disagreement." *Id.* at 391.

In *Emerson,* the Court of Criminal Appeals stated that an officer qualified as an expert on the administration and technique of the horizontal gaze nystagmus test can testify concerning a defendant's performance on the HGN test, but may not correlate the defendant's performance on the test to a precise BAC. *Emerson v. State,* 880 S.W.2d 759, 769 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). An officer trained to administer the standardized sobriety tests may opine that a defendant was under the influence of alcohol, but he or she may not opine about that defendant's specific BAC. *Id.*

 On appeal, Burkett does not dispute the reliability or the application of the HGN test, but contends the State exceeded the proper scope of testimony concerning the result of the HGN test when Officer Starnes testified that the presence of six clues indicated Burkett was intoxicated beyond the legal limit. Under the guidelines of *Emerson,* this was an impermissible attempt to estimate Burkett's blood alcohol level, and the trial court erred in admitting the evidence. *Emerson,* 880 S.W.2d at 769; *Webster v. State,* 26 S.W.3d 717, 723 (Tex.App.-Waco 2000, pet. ref'd) (the prosecutor's attempt to ask the witness to correlate Webster's performance on the HGN test to conclusion that Webster's BAC exceeded the legal limit was held to be an impermissible attempt to estimate Webster's BAC on the basis of HGN test results).

Since the alleged error in this case is not constitutional, we may not reverse the trial court's judgment unless the error affected the defendant's substantial rights. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. U.S.,* 328 U.S. 750, 766, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

The evidence in this case did not affect Burkett's substantial rights. The indictment does not allege that Burkett was intoxicated by having a blood alcohol concentration in excess of 0.08; the indictment alleges that Burkett was intoxicated because he lost the normal use of his mental and physical faculties due to alcohol consumption. Throughout its case, the State argued Burkett lost the normal use of his faculties and never referenced his potential BAC. Additionally, the State's evidence supported its impairment theory argument. In addition to Starnes' testimony on the result of the HGN test, the jury heard the testimony that Burkett smelled strongly of alcohol, could not follow instructions, refused to take the intoxilyzer test, and refused to perform the field sobriety tests on video. Since there was other evidence of Burkett's intoxication, the evidence of the HGN test did not have a substantial or injurious effect on the jury's verdict. We overrule Burkett's eighth issue.

### CONCLUSION

Having overruled each of Burkett's appellate issues, the judgment of the trial court is affirmed.