Opinion filed September 21, 2006
















 
 
  
 
 







 
 
  
 
 




Opinion filed September 21, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00261-CR 

                                                     __________

 

                                 CHERI
LOUISA MANOR, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                  On
Appeal from the County Court at Law No. 2

 

                                                        Grayson County, Texas

 

                                               Trial
Court Cause No. 2001-2-517

 



 

                                                                   O
P I N I O N








Cheri Louisa Manor appeals her conviction by a
jury of the offense of driving while intoxicated.  The jury assessed her punishment at thirty
days in the Grayson County Jail and recommended that she be placed on community
supervision.  The trial court then placed
her on community supervision for two years. 
She contends in six points of error that the evidence is legally and
factually insufficient to support her conviction and that the trial court erred
in:  (1) admitting evidence of her
alcoholism and previous attendance at Arehab@ in violation of Tex. R. Evid.  404(b); (2) admitting evidence that her
horizontal gaze nystagmus (HGN) test showed that she was over the legal limit
of intoxication; (3) refusing her requested jury charge on spoliation of
evidence in regard to the State=s
loss of the videotape of her arrest; and (4) admitting hearsay evidence of the
arresting officer that the missing videotape would substantiate his
testimony.  We affirm.

Manor contends in points one and two that the
evidence is legally and factually insufficient to support her conviction.  In reviewing the legal sufficiency of the
evidence, we consider all of the evidence in the record in the light most
favorable to the trial court=s
verdict and determine whether, based upon that evidence and all reasonable
inferences therefrom, any rational trier of fact could have found that
appellant was guilty beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307
(1979).  In order to determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light and determine whether the evidence supporting guilt is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
evidence contrary to the verdict is so strong that the
beyond-a-reasonable-doubt burden of proof could not have been met.  Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004).

Kameron Wayne Pierce testified that he is a highway
patrolman for the Texas Department of Public Safety who is trained and
certified in field sobriety testing and in the use of the Intoxilyzer
5000.  He related that on December 30,
2000, he observed Manor making a wide right turn by going outside the right
lane to make the turn.  He acknowledged
that he had in the past stopped a lot of sober people who did basically what
Manor did.  He said that, after stopping
Manor, he smelled the odor of an alcoholic beverage coming from her vehicle and
later detected a moderate odor of an alcoholic beverage on her breath.  She later said she had drank a beer.

Trooper Pierce explained how he conducted a HGN
test.  He indicated that the maximum
number of Aclues@ one could see on the HGN test were
six.  He related that, with respect to
Manor, he observed six clues.  He stated
that a portable intoximeter test, which registers the amount of alcohol in one=s system and which he administered to
Manor, did not change his opinion that she was intoxicated.    








Trooper Pierce testified that, when he asked Manor
if she could stand on one leg, she said she could not.  He said she refused to do the walk-and-turn
test or other field sobriety tests.  He
related that after three tries Manor failed to recite the alphabet
correctly.  He could not remember how she
erred.  When asked why Manor would not
perform some of the field sobriety tests, Trooper Pierce responded that she
just told him all she wanted to do was go home and go to bed.  He said that at one time Manor threw up
outside his car.

Trooper Pierce testified that Manor told him she
had recently taken Valium and Amoxicillin for depression and admitted that she
had been drinking beer.  He indicated she
would not say when her last drink was. 
He related that in his opinion Manor was intoxicated and had lost the
normal use of her mental and physical faculties.  He stated that in his opinion she lost the
use of her mental and physical faculties because of the introduction of alcohol
into her system.

On cross-examination, Trooper Pierce acknowledged
that Manor was having mood swings during the stop but insisted that they did
not start until he placed her under arrest. 
He related that he did not know where his car=s
videotape of the stop was.  Trooper Pierce
stated that his college courses dealt with panic and anxiety disorders, but he
could not remember what they said about it. 
He acknowledged that psychology or psychiatry was not part of his
training with the Texas Department of Public Safety and that he had not
conducted any psychological test on Manor.

Dr. Robert Bryan Beck, a licensed psychologist,
testified that he is familiar with what are commonly referred to as panic
attacks.  He described the condition as
one in which the patients may feel like they are being attacked.  He mentioned that the attack sometimes
results in nausea and vomiting.  He
indicated that mood swings are a symptom of panic attacks.  When asked if someone with a panic attack
would be able to perform normal physical functions, he answered that A[t]heir responses would be very
primitive and very reduced.@  He also related that someone with a panic
attack might have difficulty in answering questions.  He insisted that the HGN test was first
developed to check the neurological soundness of the brain, not as a tool for
making DWI stops.








Dr. Beck testified that he had examined
Manor.  He indicated that he had
administered tests, one of which showed that Manor had major depression without
psychotic features, followed by a generalized anxiety disorder, while the other
test showed a major depressive disorder, followed by a panic disorder.  He stated that having panic attacks would be
consistent with someone who has those problems. 
He said that, while he was not at the traffic stop and did not know if
Manor was having a panic attack on that occasion, it would not surprise him if
she were having one.  He related that
there were seven or eight chances in ten that she would have a panic attack in
that situation.  He insisted that he
would not expect someone who was experiencing a panic attack to volunteer that
information to someone witnessing the attack. 
He said that the symptoms of a panic attack are not always visible.

On cross-examination, Dr. Beck acknowledged that
he did not begin treating Manor until more than two years after her
arrest.  He also acknowledged that being
calm is not a characteristic of a panic attack. 
Dr. Beck testified that people who suffer from panic disorders are more
prone to abuse of alcohol and other drugs. 
He indicated that Manor had been in rehabilitation for a problem with
alcohol.  He stated that Valium mixed
with alcohol increases the influence or effects on people. 

Manor testified that, after her husband died in
1998, she was diagnosed with depression and anxiety.   She indicated that she suffers from panic
attacks.  She said that she was very frightened
of policemen.  She related that on the
occasion in question she was upset and had drank a beer before leaving for the
house of a friend.  She indicated that
she was also taking the drug Celexa.  She
denied ever having taken Valium.

Manor testified that, when Trooper Pierce stopped
her, she was okay at first but then lost it when he asked her to step out of
the car.  She acknowledged that, when he
asked her to stand on one leg, she had to hold on to him to keep from
falling.  She related that she was
feeling dizzy and light- headed.  She
said she told him that she needed to go to the bathroom and that she thought
she was going to be sick.  She indicated
that she could not recall the HGN test or trying to recite the alphabet.  She insisted that she did not know what she
was signing when she signed the paper that advised her that if she refused a
breath test her license would be suspended. 
She was unable to give any reason as to why she might have refused to
answer several of Trooper Pierce=s
questions.  She denied that she had ever
been told that it was unsafe to mix alcohol with Celexa.

On cross-examination, she acknowledged that she
had been to alcohol rehab on two or maybe three occasions because of drinking
and depression.  She admitted that she
had a problem with alcohol since the early 1990s.  She said that the information that she was
taking Valium could have come from her because she could not remember what she
told Trooper Pierce.








On redirect, Trooper Pierce insisted that Manor
told him that she had taken Valium and Amoxicillin.  He denied that she grabbed his arm as she got
out of the car or that she Alost
it@ before he had even asked her to
perform the field sobriety tests.  He
repeated his earlier testimony that everything was fine when he first arrested
Manor but that she started mood swings from anger to calm after he placed her
under arrest.  He again insisted that he
had not observed any hyperventilating, shaking, or trembling before the
arrest.  He said that he was familiar
with panic disorder because his father-in-law has it and that he did not see
any symptoms of the disorder.  He
admitted that he could not say Manor cannot have panic attacks if she does not
act like his father-in-law.  He also
acknowledged that his report did not say that Manor was calm during the first
part of their encounter.  We hold that
the evidence is legally and factually sufficient to support the
conviction.  We overrule points one and
two.  

Manor urges in point three that the trial court
erred by admitting evidence in violation of 
Tex. R. Evid. 404(b) of her alcoholism and
attendance at alcohol rehabilitation. 
Rule 404(b) provides that evidence of other crimes, wrongs, or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith.  The rule also
provides that such evidence might be admissible for other purposes.  Id.  Such testimony is relevant apart from
showing character conformity if it rebuts a defensive theory.  Montgomery
v. State, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991).  

Manor=s
defensive theory is that she suffered generally from depression and panic
attacks and that her suffering from such an attack caused her to appear
intoxicated on the occasion in question. 
The State was then allowed to show a more complete picture of Manor=s health C
the fact that she also suffered from alcoholism.  We hold that this testimony was properly
admissible in order to rebut Manor=s
defensive theory.  








Manor relies on three cases:  Vestal v. State, 402 S.W.2d 195 (Tex.
Crim. App. 1966); Amoco Chems. Corp. v. Stafford, 663 S.W.2d 147 (Tex.
App.CHouston
[1st Dist.] 1983, no writ); and Langdon v. Mississippi, 798 So.2d 550,
556 (Miss. Ct. App. 2001).  We have
examined these cases and find all to be distinguishable because none involved
the introduction of evidence of alcoholism to rebut a defensive theory that the
actions of the defendant were caused by another physical illness.              Manor
also complains that the State never provided notice to her of its intent to
introduce evidence of her alcoholism. 
Rule 404(b) provides that, in those instances when evidence of crimes,
wrongs, or acts is admissible for a purpose other than to prove the character
of a person in order to show action in conformity therewith, the State, where
timely requested by the defendant, must give notice of its intent to introduce
such evidence in its case-in-chief. 
Because the evidence of alcoholism of which Manor complains was
introduced in cross-examination and not in the State=s
case-in-chief, the State was not required to give advance notice to Manor of
its intent to introduce such evidence.  Jaubert
v. State, 74 S.W.3d 1, 4 (Tex.
Crim. App. 2002).

Manor=s
reliance on the cases of Buchanan v. State, 911 S.W.2d 11, 15 (Tex.
Crim. App. 1995), and Webb v. State, 36 S.W.3d 164, 179 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d), is misplaced.  In Buchanan, the evidence complained
of was introduced during the State=s
case-in-chief.  In Webb, the
opinion gives no indication that the evidence complained of was not introduced
during the State=s
case-in-chief.  We overrule point
three.  

Manor asserts in her fourth point that the trial
court erred by admitting evidence that her HGN test showed that she was Aover the legal limit.@ 
Trooper Pierce testified that, in connection with the HGN test, he
generally moves the stimulus out to a 45-degree angle from in front of the nose
and that, if there is a nystagmus prior to the 45-degree angle, the subject has
an alcohol concentration over the legal limit. 
The trial court overruled Manor=s
objection that the HGN test was not admissible for the purpose of stating that
someone is over or under the legal limit. 


Manor=s
objection was directed to testimony of Trooper Pierce that, if there is a
nystagmus prior to the 45-degree angle, then the subject has an alcohol
concentration over the legal limit.  At
that time, Trooper Pierce had not stated that Manor had a nystagmus prior to
the 45-degree angle.  Consequently, his
testimony did not express, at that time, an opinion as to whether Manor had a
nystagmus prior to the 45-degree angle or that her alcohol concentration was
over the legal limit.  Therefore, the
trial court did not err in overruling Manor=s
objection that the HGN test was not admissible for the purpose of stating that
someone was over the legal limit.  








Manor relies upon the case of Emerson v. State,
880 S.W.2d 759, 769 (Tex. Crim. App. 1994). 
In that case, the court held that a police officer should not be allowed
to testify as to a defendant=s
exact blood alcohol concentration based on HGN results alone.  Id.
at 769.  As we have noted, at the time of
Manor=s
objection, Trooper Pierce had not testified that Manor=s
exact blood alcohol concentration had exceeded the legal limit or, in any other
way, testified as to her exact blood alcohol concentration based on the HGN
test results alone.  It could be argued
that Trooper Pierce did testify as to exact blood alcohol concentration based
on the HGN test results alone when he subsequently presented testimony which
could be interpreted as showing that Manor had nystagmus onset prior to a
45-degree angle.  However, that testimony
was presented without any objection.  

Manor relies upon Burkett v. State, 179
S.W.3d 18, 34 (Tex.
App.CSan
Antonio 2005, no pet.); Webster v. State, 26 S.W.3d 717, 723 (Tex. App.CWaco 2000, pet. ref=d); and Youens v. State, 988
S.W.2d 404, 405-06 (Tex. App.CHouston
[1st Dist.] 1999, no pet.).  In all of
these cases, at the time the testimony was given, it would have amounted to
testimony that, as a result of the HGN test, the defendant=s blood alcohol concentration exceeded
the legal limit.  Burkett, 179
S.W.3d at 34; Webster, 26 S.W.3d at 723; Youens, 988 S.W.2d at
406.  In Webster, we assume that
there had been testimony that the four clues had been observed during the
defendant=s HGN
test because otherwise the court would not have held that the prosecutor=s question correlated the defendant=s performance on the HGN test to a
conclusion that his blood alcohol concentration exceeded the legal limit.  As previously noted, Manor objected to the
State=s
question in the case at bar on the basis that the HGN test was not admissible
for the purpose of stating that someone was over or under the legal limit.  However, at the time Manor made this
objection, there had been no testimony that Manor had nystagmus prior to the
stimulus reaching a 45-degree angle; consequently, Trooper Pierce had not, at
that time, indicated that Manor=s
blood alcohol concentration exceeded the legal limit because the officer had
observed six clues during her HGN test. 
Later, when such testimony was offered, there was no objection.  We overrule point four.          

Manor insists in point five that the trial court
erred by not submitting an instruction to the jury with respect to spoliation
of evidence.  The State at trial failed
to produce a videotape of the traffic stop in question.  Trooper Pierce stated that he did not know
where it was.  A defendant in a criminal
prosecution is not entitled to a spoliation instruction where there is no
showing that the evidence was exculpatory or that there was bad faith on the
part of the State in connection with its loss. 
White v. State, 125 S.W.3d 41, 43-44 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d). 
Manor presents no authority to the contrary, and we are not aware of
any.  We overrule point five.








Manor suggests in point six that the trial court
erred by admitting Trooper Pierce=s
hearsay testimony that the missing videotape would substantiate his
testimony.  When asked whether in his
opinion the missing videotape would substantiate the claims he was making in
court, Trooper Pierce replied, ASure.@ 
Manor=s counsel
then objected on the basis of hearsay. 
In order to be timely, an objection to an objectionable question must be
made before the witness responds.  Dinkins
v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995).  Where, as here, the objection is not made
until after the witness responds to the objectionable question and the record
does not reflect a legitimate reason to justify the delay, error is
waived.  Id.   We
overrule point six.

The judgment is affirmed.

 

PER CURIAM

 

September 21, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  McCall, J., and

Strange,
J., and Hill, J.[1]











[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.