Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-07-00251-CR

Gregory **LINDSEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 856829
Honorable Olin B. Strauss, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:    December 10, 2008

AFFIRMED

A jury found defendant, Gregory Lindsey, guilty of driving while intoxicated and the trial court assessed punishment at 180 days' confinement, probated for one year.  We affirm.

## BACKGROUND

Sometime past midnight on March 21, 2003, defendant drove his vehicle into another vehicle that was parked in front of the residence of Steven Sutton.  At trial, Sutton testified he saw defendant's vehicle, a Four Runner, hit his wife's car, a Sunfire, with sufficient impact to send the

Sunfire into the front yard of a neighbor's house, and cause the Four Runner to hit the curb, swerve, land on its side and spin around before finally coming to a rest on its side about three houses down from Sutton's house. As Sutton ran towards the Four Runner, he saw defendant attempting to crawl out through a gap underneath the passenger-side window. When defendant tried to push his vehicle right-side up, Sutton told him to sit down on the curb. Defendant sat down and put his hands behind his head. Sutton described defendant as "confused."

One of the paramedics who treated defendant at the scene, Mark Lerma, testified defendant was alert and oriented, and defendant told him "he really had a lot to drink that night." Officer Nancy Olguin, who arrived at the scene after the ambulance, testified defendant swayed when he stood up, smelled strongly of intoxicants, slurred his speech, had red eyes, and was uncooperative. Although Olguin suspected defendant was intoxicated, she conducted no field sobriety tests because defendant was swaying and could not stand on his own. After defendant's Four Runner was flipped right-side up, Olguin found an empty bottle of rum and a one-quarter-full bottle of rum in the vehicle. After paramedics treated defendant, he was placed inside Olguin's patrol car for transport to the magistrate's office. However, because defendant's head started to bleed, Olguin took him to the hospital. Olguin concluded defendant was intoxicated based on his swaying, the smell of his breath, his red eyes, and his slurred speech.

## ADMISSION OF EVIDENCE

In his second issue, defendant asserts the trial court erred by admitting into evidence the results of his medical blood draw, which indicated he was intoxicated, because the State did not establish the chain of custody for the hospital lab results. The Texas Rules of Evidence do not define

the term "chain of custody"; however, Rule 901(a) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). The court properly admits evidence when a reasonable juror could find that the evidence was authenticated. *Pondexter v. State,* 942 S.W.2d 577, 586 (Tex. Crim. App. 1996).

Here, William Herrera, an emergency room nurse, testified he was at defendant's bedside when defendant's blood was drawn, but he could not remember who drew the blood. Herrera stated that a patient's blood is drawn into a vial and the vial is labeled with the patient's name, identification number, and date of birth. Kathy Hurd, a medical technologist at the hospital, testified that when the vial of blood arrives in the lab, it is accompanied by a lab request, which indicates the tests to be run on the blood. Hurd stated that defendant's identification information written on the vial's label matched the identification information on the lab request, which, in turn, matched the same information contained in the lab results report.

On appeal, defendant contends it is mere speculation that the blood tested was his. However, the record contains no evidence suggesting that the blood drawn was tampered, confused or comingled with that of another patient. "Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State,* 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *see also Silva v. State,* 989 S.W.2d 64, 68 (Tex. App.—San Antonio 1998, pet. ref'd) (explaining that chain of custody goes to the weight, not admissibility). On this record, we conclude the trial court did not abuse its discretion in allowing the results of defendant's medical blood draw into evidence.

In his first issue, defendant asserts the trial court erred in admitting into evidence Lerma's testimony regarding the statements defendant made to Lerma. Defendant argues federal law prohibits the disclosure of personal information obtained by a health care worker that relates to a person's past, present, or future medical condition. Although defendant does not specify the statements to which he objects, we assume it is Lerma's testimony that defendant said "he really had a lot to drink that night."

Even if we assumed arguendo that admission of Lerma's testimony was error, we cannot say it affected defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). To assess the likelihood the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Id.* Overwhelming evidence of guilt is a factor in any thorough harm analysis. *Id.* at 357-58.

The State did not dwell on Lerma's testimony, although the prosecutor referred to his testimony in its closing argument. Instead, the State relied on other overwhelming evidence of guilt. Officer Olguin testified she believed defendant was intoxicated because he swayed when he stood up, smelled strongly of intoxicants, slurred his speech, and had red eyes. Herrera testified he made a note in defendant's medical records that stated: "Patient apologizing to mother for drinking and

driving." Hurd testified defendant's blood alcohol level was three times the legal limit and she agreed his blood alcohol level was "within the stupor range." After examining the record as a whole, we conclude defendant's substantial rights were not affected by the admission of Lerma's testimony into evidence.

## JURY ARGUMENT

In his final issue, defendant asserts the trial court erred by denying his motion for a mistrial based on his objection to the following remarks made by the prosecutor, Ms. Kristina Escalona, during closing arguments:

> Now I can only anticipate what Defense counsel will get up here and say. But I have a feeling that he's going to remind you that the burden lies at this [the State's] table.
>
> . . .
>
> The Defense has taken every witness on that stand and the Defense has tried with all veracity he can, with every scrap of energy that a - - that a cornered animal might have that he knows - -
>
> [defense objection overruled]
>
> With every ounce of energy he can when he knows he has no place to go. Example just shown. What we have here  - -
>
> [defense objection]
>
> [Trial court:] Overruled. And, Ladies and Gentlemen, this is argument of trial. This is not evidence.  . . . .

On appeal, the State agrees the prosecutor's statement "arguably became objectionable" when she made this "mildly inappropriate" comment. Defendant argues the prosecutor improperly struck at him over the shoulders of his attorney. We agree with defendant that the prosecutor's comments

were improper. Ms. Escalona's characterization of defense counsel as a "cornered animal" and then using counsel's objection to her remark as an example "just shown" was improper. Therefore, the trial court erred by not sustaining defendant's objection to Ms. Escalona's remarks.

Improper jury argument is non-constitutional error, which must be disregarded if the error "does not affect substantial rights." TEX. R. APP. P. 44.2(b). In determining whether the defendant's substantial rights have been affected, we balance the following factors: (1) the severity of the misconduct; (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Burkett v. State*, 179 S.W.3d 18, 29 (Tex. App.—San Antonio 2005, no pet.).

We believe the first and second factors weigh in favor of defendant. Disparaging remarks about opposing counsel prejudice the rights of all litigants and trial courts must do more than merely remind jurors that counsel's argument does not amount to evidence. *See Bray v. State*, 478 S.W.2d 89, 90 (Tex. Crim. App. 1972) ("Trial judges should assume the responsibility of preventing this type of argument. A rebuke by the trial judge in the presence of the jury may do more to end the practice of intemperate and improper argument than repeated admonitions or even reversals by this court."). However, because the prosecutor moved on, after her remarks, to a discussion of the evidence presented at trial and in view of the evidence supporting a finding that defendant was intoxicated, we conclude the outcome of the trial absent the prosecutor's conduct would not have been different. Therefore, the trial court's error did not affect defendant's substantial rights.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice

DO NOT PUBLISH