**Phillip Earl LYDIA, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–298–CR.**

Court of Appeals of Texas, Fort Worth.

July 3, 2002.

---

**2.** Rule 621a provides for discovery and enforcement of judgments. *See* Tex R. Civ. P. 621a.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney and Chief of the Appellate Section, Michael R. Casillas and Sheila Wynn, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

### OPINION

TERRIE LIVINGSTON, Justice.

Appellant Phillip Earl Lydia appeals from a jury verdict finding him guilty of aggravated robbery causing bodily injury to a disabled person. The jury sentenced appellant to eighteen years' imprisonment. We affirm.

### Facts

Appellant and the victim, Charles Washington, had been introduced to each other through a mutual friend who lived at the same apartment complex as Washington. Appellant had visited Washington at his apartment on a couple of occasions before the robbery. Washington is an elderly man who is disabled on his right side from a stroke. He cannot use his right arm at all and can barely use his right leg.

One evening appellant knocked at Washington's door and asked for a drink of water. Washington let him in, then gave him a drink and a cigarette. Appellant also asked if he could borrow some money from Washington, who replied he did not have any. Appellant then grabbed for a picture frame with money in it Washington kept on top of his television and sprayed Washington in the face with pepper spray or Mace. Appellant pushed Washington to the floor, yanked the phone out of the wall, and left. Washington suffered from his burning eyes and a cut on his knee.

Law Office of William H. "Bill" Ray, P.C. and William H. "Bill" Ray, Fort Worth, for Appellant.

Washington went to his neighbor's apartment and called the police, who investigated the robbery and took Washington's statement that identified appellant as the person who robbed him.

## Point on Appeal

In appellant's sole point on appeal, he complains that the prosecutor improperly attempted to bind prospective jurors to a specific factual situation during voir dire contrary to the court of criminal appeals' recent pronouncement on the issue contained in *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App.2001).

## Discussion

In *Standefer*, the court of criminal appeals held that during voir dire a trial court should first determine if a question is a commitment question and secondly, whether the question includes facts, and only those facts, that lead to a valid challenge for cause. *Id.* at 182.[1] The prohibition on "commitment questions" has long been a part of Texas criminal practice. The general rule has been that it is improper to ask a commitment question during voir dire because it would amount to an improper attempt to bind a juror. *See Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). The prohibition against a question that binds a juror to a particular conclusion clashes with the ability of the parties to effectively challenge for cause those jurors who cannot impartially judge the credibility of the witnesses. *See Ladd v. State*, 3 S.W.3d 547, 560–61 (Tex.Crim.App.1999), *cert. de-*

*nied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).

■ The code of criminal procedure allows either side to challenge a juror for cause when the challenging side can show the juror is incapable or unfit to serve on the jury. Tex.Code Crim. Proc. Ann. art. 35.16 (Vernon 1989 & Supp.2002). The rule lists many specific challenges, but also allows a juror to be challenged for cause if either side can show "[t]hat he has a bias or prejudice in favor of or against the defendant." *Id.* art. 35.16(a)(9) (Vernon 1989). Further, the State may challenge a juror for cause when it can show "[t]hat he has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." *Id.* art. 35.16(b)(3) (Vernon Supp.2002). Likewise, the defense can challenge a juror for cause when it can show:

That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor.

*Id.* art. 35.16(c)(2). Potential "jurors must be open-minded and persuadable, with no *extreme* or *absolute* positions regarding the credibility of any witness." *Ladd*, 3 S.W.3d at 560.

■ Additionally, each side is allowed to exercise peremptory challenges to jurors. Tex.Code Crim. Proc. Ann. art. 35.14 (Vernon 1989). These challenges are usually limited in number and can be asserted against jurors without assigning any reason for the challenge. *Id.*[2] In Texas, the

1. *See also Freeman v. State*, 74 S.W.3d 913, 915–16 (Tex.App.-Amarillo 2002, pet. filed) (holding question that asked potential juror if the fact that victim is a two-week old child will affect their verdict inappropriate because the juror's possible answer might require ju-

ror to resolve or refrain from resolving an issue in case).

2. The number of challenges granted each side depends on the type of case and the number

unbridled right to a certain number of peremptory challenges encompasses the right to question jurors sufficiently in order to intelligently exercise not only challenges for cause but also peremptory challenges. *See Johnson v. State,* 43 S.W.3d 1, 6 (Tex.Crim.App.2001); *Janecka v. State,* 937 S.W.2d 456, 470–71 (Tex.Crim.App. 1996), *cert. denied,* 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997). While a defendant does not have a right to have a particular juror sit on his jury, he does have the right *"not* [to] have a particular venire member on the jury *if* the venire member is challengeable for cause or the defendant exercises one of his peremptory challenges." *Johnson,* 43 S.W.3d at 6–7; *see also id.* at 8 (Keller, J., concurring).

### Application

In this case, the prosecutor asked the entire venire panel whether it could fairly evaluate a witness and his testimony where the witness, here the victim, had a criminal history. The defense's timely objection, claiming the prosecution was improperly trying to bind the venire, was overruled, but the court gave the defense a running objection to these questions. The prosecutor repeatedly asked the same question of prospective jurors who indicated they might have a concern with this type of witness testimony. The prosecutor also asked whether the prospective jurors *could fairly evaluate such a witness who* had been convicted of crimes against the actual defendant on trial. Again, the defense's objection was overruled, but the court allowed a running objection. Two jurors who gave specific statements in response to these questions were seated on the jury.

Appellant's complaint focuses on the prosecutor's questions asking the jurors whether they could evaluate a person's of defendants being tried. Tex.Code Crim.

credibility and determine his truthfulness, without automatically dismissing his testimony because of his past criminal history. Appellant contends the *Standefer* directives should be applied retroactively thereby requiring a new trial. The State contends the new *Standefer* rules should only apply prospectively or at least with only limited prospectiveness. Thus, our first inquiry is whether *Standefer* applies.

This case was tried on July 9 and 10, 2001. The *Standefer* opinion was issued on October 31, 2001. The State contends that because *Standefer* sets forth a new standard for determining whether the State had improperly asked a commitment question, that standard should only be applied with limited prospectivity, i.e., applied retroactively and only to the case in which the new rule is promulgated (the *Standefer* case), but prospectively to those cases where the operative facts occurred after the adoption of the new rule (those cases where trial began after the opinion issued). However, before we determine whether to apply *Standefer* retroactively, prospectively, or with limited prospectivity, *Taylor* directs us to first see whether *Standefer* actually created a new rule. *See Taylor v. State,* 10 S.W.3d 673, 681 (Tex. Crim.App.2000).

In *Taylor,* the Texas Court of Criminal Appeals addressed the issue of limited prospectivity and retroactiveness of new rules. *Id.* The court instructed us that we do not need to determine retroactiveness unless we first determine that the new rule is in fact a new rule. *Id.* According to *Taylor:*

> Court-made rules based upon supervisory or inherent judicial power may be new if no previous decision of the court has articulated the rule.... For an in-

Proc Ann. art. 35.16.

terpretation to qualify as a new rule, the interpretation must have been preceded by an earlier inconsistent interpretation. And the earlier interpretation must be one that can be viewed as authoritative by the court issuing the subsequent interpretation. *Id.* at 681–82. Only if a court first determines that a pronouncement qualifies as a new rule, must it then proceed to apply the *Taylor* factors to a new rule of non-constitutional origin. The State and appellant concede the *Standefer* opinion creates a new court-made rule. We agree.

█ While *Standefer* does not appear to have changed the standard of review for appellate courts to use, that is, the abuse of discretion standard, it has clarified the factors for courts to consider in conducting that review. Further, *Standefer* overruled *Maddux v. State,* 862 S.W.2d 590, 590–91 (Tex.Crim.App.1993) (holding no commitment question asked when juror was asked whether she could consider probation in a murder case in which a child had died), but left *Nunfio v. State* intact. 808 S.W.2d 482, 485 (Tex.Crim.App.1991) (holding proper to question whether prospective juror could be fair and impartial if victim was a nun).[3] In *Maddux,* the question on appeal was whether the *Nunfio* victim status question should also apply to another class of victims, i.e., to child victims, so as to allow the questioning. *Maddux,* 862 S.W.2d at 591. The court held it should. *Id.* at 592. Now, however, instead of focusing on the victim's status, the court of criminal appeals is articulating standards that we can apply to determine whether

any voir dire question is an improper commitment question regardless of the victim's status. Therefore, we conclude that *Standefer* created a new rule because there was no prior rule articulated to generally cover all bias/commitment questions, and if there was a rule, it was a rule of limited application and was overruled.

█ Because we conclude *Standefer* created a new rule, we turn to *Taylor* to determine whether to apply the new rule to this case. In *Taylor,* the court instructed us to conduct a *Stovall*-type balancing inquiry to determine whether new rules should be applied retroactively or prospectively. *Taylor,* 10 S.W.3d at 680 (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). In *Stovall,* the United States Supreme Court articulated three factors to consider to determine whether a rule should be given retroactive effect. A court should consider:

(a) the purpose to be served by the new standard;

(b) the extent of reliance by law enforcement authorities on the old standards; and

(c) the effect on the administration of justice of a retroactive application of the new standards.

*Id.* at 678 (citing *Stovall,* 388 U.S. at 297, 87 S.Ct. at 1970).

The *Taylor* court expanded upon the *Stovall* factors stating:

In essence, if the factors weighed in favor of prospective application, *Stovall* required that the new rule be given "limited prospectivity": the new rule

---

**3.** In the *Standefer* opinion the court noted there were clear distinctions between the two cases and clarified that the *Standefer* opinion is not to be construed as "addressing in any manner the validity or construction of the *Nunfio* line of precedent." *Standefer,* 59 S.W.3d at 180–81 & n. 12 (citing *Nunfio,* 808 S.W.2d at 482). However, the court of crimi-

nal appeals has recently overruled *Nunfio. Barajas v. State,* No. 415–99, slip op. at 7–11, 2002 WL 1380916, at *3–5, —— S.W.3d ——, ——–—— (Tex.Crim.App. June 26, 2002) (holding improper a question that asks whether the venire could be fair and impartial where victim was nine years old because such a question was vague and overly broad).

would be applied to the parties in the case in which the new rule was announced (a retroactive application), but the new rule would otherwise be prospective, applying only to cases in which the operative facts occurred after the adoption of the new rule.

*Id.* at 678.

■■ The first factor to examine under the *Taylor / Stovall* factors is the purpose of the new rule. If that purpose impacts the truth-finding function of a trial then the "purpose factor will generally outweigh the reliance and administration of justice factors and require a holding of retroactivity." *Id.* at 682. It is clear that if the object of the rule is to assist both sides in exercising their challenges for cause and peremptory challenges to remove jurors with bias, then a rule outlining what constitutes a prohibited commitment question must promote the truth-finding function of a trial. However, we cannot say that law enforcement authorities would be impacted by this rule at all or that the retroactive application of the *Standefer* test would greatly affect the administration of justice. Instead the *Standefer* test would provide both the defense and the state with meaningful and clearer tools for evaluating the propriety of the questions they ask on voir dire as well as providing guidance for objecting to opposing counsel's questions. As a result, we conclude the *Taylor/Stovall* factors weigh most heavily toward the truth-finding function of a trial and therefore require retroactive application to all cases pending on direct appeal or those not yet final when *Standefer* was decided.[4] Therefore, we apply the new rule provided in *Standefer* in this case.

■ Applying *Standefer* to these facts, we first ask whether the question is a commitment question. We conclude that it is not because it does not ask the prospective juror to resolve or refrain from resolving any issue. Because we answer this question negatively, we do not need to reach the second or third *Standefer* questions as to this line of questioning. We conclude that the State's questions to the jury on whether they could be impartial regardless of the victim's criminal history is not an improper bias or commitment question.

The other challenged question added an additional fact: whether the juror could remain impartial if the prior criminal act of the victim included a crime against the defendant in the case. This question included an additional fact that was more fact specific to the particular case. However, it still is not a commitment question under *Standefer.* Once again, the question only asks the jurors to impartially evaluate testimony; it does not ask the juror to resolve the victim's testimony in any given way in light of the additional fact. Thus, again we conclude the State did not ask a commitment question, so we do not apply the remaining *Standefer* questions.

## Conclusion

Because we have concluded *Standefer* should be applied to appellant's case on appeal and the questions asked are not commitment questions under *Standefer,* we affirm the trial court's judgment.

---

4. This conclusion comports with the court of criminal appeals' decision to overrule *Mad-* *dox,* a case that was already final. *See Standefer,* 59 S.W.3d at 181.