**Debra TIJERINA, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–04–391–CR.**

Court of Appeals of Texas,
Fort Worth.

July 13, 2006.

Danny Burns, Fort Worth, for appellant.

Tim Curry, Crim. D.A., Charles M. Mallin, Asst. Crim. D.A. and Chief of the Appellate Division, C. James Gibson, Darrell Davila, and Jennifer Tourje, Asst. Crim. D.AS., Fort Worth, for State.

PANEL B: DAUPHINOT, WALKER, and McCOY, JJ.

## OPINION ON REHEARING

SUE WALKER, Justice.

Following the issuance of our original opinion, the State filed a motion for re-hearing arguing that the error in the case was harmless. We deny the State's motion for rehearing, but we withdraw our opinion and judgment issued February 2, 2006, and substitute the following in their place to more fully address the harm analysis.

## I. INTRODUCTION

Appellant Debra Tijerina appeals her conviction for possession of methamphetamine of less than one gram. The controlling issue in this appeal is whether a distinction exists between the voir dire question in this case—"Is there anybody here who feels that you would automatically disbelieve somebody simply because they are a convicted felon, be they a witness, a police officer, a defendant, anybody?"—and the voir dire question—"Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?"—which the court of criminal appeals held in *Lydia v. State* was a commitment question. 109 S.W.3d 495, 499 (Tex.Crim.App.2003). Because we perceive no distinction between these questions, we hold that the question in this case was a commitment question, we follow our analysis in *Lydia* on remand, and we conclude that the trial court abused its discretion by prohibiting the defense from asking the question. *See Lydia v. State*, 117 S.W.3d 902, 904 (Tex. App.-Fort Worth 2003, pet. ref'd). We apply the harm analysis as instructed by the court of criminal appeals in *Rich v. State*, and we hold that Tijerina's substantial rights were affected by this error. *See* 160 S.W.3d 575, 577–78 (Tex.Crim. App.2005). Accordingly, we reverse the trial court's judgment and remand the case for a new trial.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Two Fort Worth police officers stopped Tijerina in her car after observing her

drive the wrong way against traffic. Carla Canada was riding in the passenger seat. While one officer ran a check of the information Tijerina gave him, the other officer saw Tijerina reach into a purse sitting on the center console, pull out a day planner, and place it between some bags in the backseat. The officers arrested Tijerina because she had outstanding warrants for her arrest. A subsequent search of the car revealed a baggie of methamphetamine next to the day planner in the backseat and two baggies containing methamphetamine residue inside the day planner. The State charged Tijerina with possession of methamphetamine of less than one gram, and the indictment included an enhancement paragraph alleging Tijerina had two prior felony convictions for forgery by possession of a check with intent to pass. Tijerina pleaded not guilty.

During voir dire, Tijerina's defense counsel asked one of the venire members if he would "automatically disbelieve somebody simply because they are a convicted felon," and the State did not object to this question. The following exchange then took place:

> [DEFENSE COUNSEL]:.... Is there anybody here who feels that you would automatically disbelieve somebody simply because they are a convicted felon, be they a witness, a police officer, a defendant, anybody?....
>
> [PROSECUTOR]: Judge, I object to that statement, invading the province of the jury, certainly entitled to assess credibility however they like and we object on those grounds.
>
> THE COURT: Sustained.
>
> [DEFENSE COUNSEL]: I would ask that question of each and every juror if I were given the opportunity. Is the Court telling me I can't?
>
> THE COURT: I would sustain the objection.

After both sides made their challenges, Tijerina's defense counsel moved to quash the panel and for a mistrial, reiterating his desire to ask whether the venire members "would simply disbelieve a witness simply because they were a convicted felon." The trial court denied his requests. He then asked to reopen voir dire to ask the question as he had just stated it, and the trial court again denied his request.

### III. PROPER COMMITMENT QUESTION

█ In her first point, Tijerina contends that the trial court erred by sustaining the State's objection to defense counsel's question in voir dire regarding whether potential jurors would automatically disbelieve a convicted felon. The State responds that the question was an improper commitment question because it did not lead to a valid challenge for cause or, in the alternative, that Tijerina was not harmed by the trial court's ruling prohibiting defense counsel from asking the question.

### A. Standard of Review Concerning Voir Dire Questions

█ A trial court has broad discretion over the process of selecting a jury. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim. App.2002); *Allridge v. State*, 762 S.W.2d 146, 167 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Lydia*, 117 S.W.3d at 904. We leave to the trial court's discretion the propriety of a particular question, and the trial court's discretion will not be disturbed on appeal absent an abuse of that discretion. *Sells v. State*, 121 S.W.3d 748, 755 (Tex.Crim.App.), *cert. denied*, 540 U.S. 986, 124 S.Ct. 511, 157 L.Ed.2d 378 (2003); *Barajas*, 93 S.W.3d at 38; *Allridge*, 762 S.W.2d at 163; *Lydia*, 117 S.W.3d at 904. A trial court abuses its discretion only when it prohibits a proper question about

a proper area of inquiry. *Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 163.

### B. *Standefer* Analysis

The determination of whether a question propounded to venire members during voir dire is a proper commitment question is a three-part inquiry. *See Standefer v. State,* 59 S.W.3d 177, 182–83 (Tex.Crim. App.2001); *see also Lydia,* 117 S.W.3d at 905. In *Standefer,* the court of criminal appeals held that a trial court should first determine if a question is a commitment question. 59 S.W.3d at 182–83. A commitment question is one that commits a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. *Id.* at 179. If a question is a commitment question, then the court must decide whether it is nevertheless a proper question. *Id.* at 181–82. For a question to be a proper commitment question, one of the possible answers to the question must give rise to a valid challenge for cause. *Id.* at 182. However, even if a question meets the "challenge for cause" requirement, the inquiry does not end there. *Id.* A proper commitment question must also contain only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.*

Either side may challenge a juror for cause when it can show that the juror is incapable or unfit to serve on the jury. Tex.Code Crim. Proc. Ann. art. 35.16 (Vernon Supp.2005). A juror may be challenged for cause if either side can show "[t]hat the juror has a bias or prejudice in favor of or against the defendant." *Id.* art. 35.16(a)(9). "A challenge for cause is only proper based on bias if a prospective juror harbors an *automatic predisposition* to-

ward one view of witness credibility based upon knowledge of a certain fact about the witness." *Harris v. State,* 122 S.W.3d 871, 880 (Tex.App.-Fort Worth, 2003, pet. ref'd) (emphasis added). The court of criminal appeals has held that a potential juror may be properly challenged for cause and removed "if he cannot impartially judge the credibility of a witness." *Ladd v. State,* 3 S.W.3d 547, 560 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). This means that "jurors must be open-minded and persuadable, with no *extreme* or *absolute* positions regarding the credibility of any witness." *Id.*

In this court's original opinion in *Lydia,* we held that the question, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" was not a commitment question.[1] *See* 81 S.W.3d 486, 492 (Tex.App.-Fort Worth 2002, pet. ref'd), *vacated,* 109 S.W.3d at 495. The court of criminal appeals granted Lydia's petition for discretionary review and held that the question was a commitment question because it "asked whether the prospective juror would resolve the issue of witness credibility based on a particular fact—the witness'[s] criminal history." *Lydia,* 109 S.W.3d at 499–500. The court of criminal appeals remanded the case to this court for an analysis under the remaining prongs of the *Standefer* test. *Id.* On remand, we held that the commitment question met the remaining two prongs of *Standefer;* it would lead to a proper challenge for cause based on a juror's bias, and it included only those facts necessary to test whether a prospective juror was chal-

---

1. In *Lydia,* the victim was a convicted felon, so the State wanted to know whether potential jurors would automatically dismiss a wit-

ness's (i.e., the witness's) testimony because of the witness's criminal history. 117 S.W.3d at 905.

lengeable for cause. *See Lydia*, 117 S.W.3d at 904, 905–06. Consequently, we held that the trial court did not abuse its discretion by permitting the State to ask this proper commitment question during voir dire. *Id.*

Here, the voir dire question that defense counsel sought to ask is substantially the same as the question the State asked in *Lydia.* Tijerina is a convicted felon, so the defense wanted to know whether potential jurors would automatically disbelieve a witness's (i.e., the defendant's) testimony because of the witness's status as a felon. We see no distinction between the question here, "Is there anybody here who feels that you would automatically disbelieve somebody simply because they are a convicted felon, be they a witness, a police officer, a defendant, anybody?" and the question in *Lydia,* "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" Accordingly, we hold that the question at issue here is a commitment question because it asked prospective jurors whether they would resolve an issue, witness credibility, based solely on a particular fact, that the witness was a convicted felon. *See Lydia*, 109 S.W.3d at 499. Regarding the second prong of *Standefer,* the question would lead to a proper challenge for cause under article 35.16(a)(9) based on a juror's bias. *See* Tex.Code Crim. Proc. Ann. art. 35.16(a)(9); *Ladd,* 3 S.W.3d at 560 (holding that a prospective juror may be properly challenged for cause if he cannot impartially judge witness's credibility); *Lydia,* 117 S.W.3d at 905. The question satisfied the third prong of *Standefer* because it included only those facts necessary to determine whether a prospective juror was challengeable for cause, reference to a witness's status as a

convicted felon. *Standefer,* 59 S.W.3d at 182; *Lydia,* 117 S.W.3d at 906.

The State argues that under *Standefer's* second prong the question at issue would not have led to a proper challenge for cause because the rules of evidence allow a juror to disbelieve a witness on account of her prior felony convictions. *See* Tex.R. Evid. 609(a) ("For purposes of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude. . . ."). The State argues, for example, that asking potential jurors if they would automatically believe a police officer is different from asking them if they would automatically disbelieve a convicted felon because, under the rules of evidence, a juror has a right to disbelieve a convicted felon. We agree that a juror may choose to disbelieve any witness once the witness testifies. But if a potential juror states that he would automatically disbelieve a witness who has not yet testified based solely on the witness's status as a felon, that potential juror cannot impartially judge the credibility of the convicted felon witness just as a potential juror who would automatically believe a police officer cannot impartially judge the credibility of a police officer. *See Hernandez v. State,* 563 S.W.2d 947, 950 (Tex.Crim.App.1978) (holding that venire member was properly challengeable for cause under article 35.16(a)(9) because she stated her belief that a police officer would not tell a lie under any circumstance). Instead, the potential juror has expressed an *absolute* position regarding the credibility of a witness who has a felony conviction. *See id.*; *cf. Smith v. State,* 907 S.W.2d 522, 531 (Tex.Crim.App.1995) (holding that venire member was not properly challengeable under article 35.16(a)(9) because he did not state that he would *always* believe a Texas

Ranger, but that he would *tend to believe* a Ranger but still listen to the facts and circumstances presented). The question posed by defense counsel in voir dire only sought to elicit whether potential jurors had an *automatic predisposition* to disbelieve a witness who was a convicted felon, and thus, it would have led to a proper challenge for cause. *See Harris,* 122 S.W.3d at 880.

We conclude that the question proposed by defense counsel during voir dire was a proper commitment question. Accordingly, we hold that the trial court abused its discretion by prohibiting defense counsel from asking potential jurors the question. *See Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 163.

### C. Harm Analysis

■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2; *see Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App. 1999) (holding that impermissible exclusion of proper question in voir dire is subject to harm analysis). If the error is constitutional, we apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to the appellant's conviction or punishment. Tex.R.App. P. 44.2(a). Otherwise, we apply Rule 44.2(b) and disregard the error if it did not affect the appellant's substantial rights. Tex.R.App. P. 44.2(b); *see Mosley*

v. State, 983 S.W.2d 249, 259 (Tex.Crim. App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd).

■ Tijerina's complaint is governed by Rule 44.2(b). *See* Tex.R.App. P. 44.2(b); *Rich,* 160 S.W.3d at 577–78.[2] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643. In *Kotteakos,* the United States Supreme Court explained,

[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 765, 66 S.Ct. at 1248; *see also Motilla v. State,* 78 S.W.3d 352, 355–58 (Tex.Crim.App.2002); *Johnson v. State,* 43

---

**2.** Tijerina argues that *Rich* does not mandate a Rule 44.2(b) harm analysis and urges us to analyze harm under Rule 44.2(a) because the court of criminal appeals in *Rich* stated, "The Court of Appeals found this to be non-constitutional error and applied Rule 44.2(b). Rich does not contest this conclusion, so *we assume that to be the proper rule.*" 160 S.W.3d at 577 (emphasis added). More recently, however, in *Sanchez v. State,* the court of criminal appeals interpreted its *Rich* opinion as requiring a Rule 44.2(b) harm analysis.

165 S.W.3d 707, 713 n. 16 (Tex.Crim.App. 2005) (interpreting *Rich* to hold that "Rule 44.2(b) ... is applicable when voir dire is conducted in a group setting and defendant is prohibited from asking a proper question of the panel"). Thus, following *Rich* and *Sanchez,* we will conduct a Rule 44.2(b) harm analysis. But because we conclude that the error here was harmful under our Rule 44.2(b) analysis, we note that we would likewise find it harmful under the less stringent Rule 44.2(a) harm analysis.

S.W.3d 1, 4 (Tex.Crim.App.2001). In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). In *Rich,* the court of criminal appeals set forth the following considerations for evaluating the harm resulting from the trial court's erroneous exclusion of a proper voir dire question: (1) any testimony or physical evidence admitted for the jury's consideration, (2) the nature of the evidence supporting the verdict, (3) the character of the error and how it might be considered in connection with other evidence in the case, (4) the jury instructions, (5) the State's theory and any defensive theories, (6) closing arguments, (7) voir dire, and (8) whether the State emphasized the error. 160 S.W.3d at 577–78.

When a trial court improperly refuses to allow defense counsel to ask a proper voir dire question, it is almost impossible to determine how the error affected "the way in which a defense counsel would [have] conduct[ed] the trial." *Gonzales v. State,* 2 S.W.3d 600, 606 (Tex.App.-Texarkana 1999, pet. ref'd) (noting that prudent defense counsel—when faced with trial court error preventing him from questioning potential jurors about their attitudes toward a specific defense—would not attempt to present evidence of that defense to jury). Thus, courts have struggled with the application of a harm analysis to this type of error, and some have noted that such error will rarely be harmless. *See Wappler v. State,* 183 S.W.3d 765, 779 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding trial court error in prohibiting defendant from asking proper voir dire questions harmful); *Loredo v. State,* 59 S.W.3d 289, 293 (Tex.App.-Corpus Christi 2001, no pet.) (holding trial court error in refusing to allow defense counsel to ask proper questions about parole was harmful and noting such error will rarely be harmless); *Rios v. State,* 4 S.W.3d 400, 403–04 (Tex.

App.-Houston [1st Dist.] 1999, pet. dism'd) (expressing reluctance to apply harm analysis to trial court error in improperly limiting voir dire time but holding error harmful under Rule 44.2(a)); *Gonzales,* 2 S.W.3d at 603; *see Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997) (applying former Rule 81(b)(2) harm analysis to hold that some errors will never be harmless because "data is insufficient to conduct a meaningful harmless error analysis").

Although difficult, we attempt to evaluate harm here by addressing the considerations enumerated by the court of criminal appeals in *Rich. See* 160 S.W.3d at 577–78. We first consider the character of the error. Tijerina was prevented from asking a proper commitment question during voir dire and was thereby prevented from challenging for cause any jurors harboring an automatic disbelief of testimony given by a convicted felon—herself. *See* TEX.CODE CRIM. PROC. ANN. art. 35.16(a)(9); *Harris,* 122 S.W.3d at 880. Tijerina was prevented from learning whether potential jurors could impartially judge the credibility of a convicted felon witness—herself. *See Ladd,* 3 S.W.3d at 560. Tijerina had a right to testify on her own behalf. *See* TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005) ("Any defendant in a criminal action shall be permitted to testify in his own behalf. . . ."). Tijerina also had a constitutional right to an impartial jury. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Sanchez,* 165 S.W.3d at 710–11 (noting that the first purpose of voir dire is to establish a basis for a challenge for cause when a potential juror is legally disqualified or is biased or prejudiced for or against one of the parties or the relevant law); *Gonzales,* 2 S.W.3d at 603 ("Part of [the right to an impartial jury and assistance of counsel] is an adequate

voir dire to identify unqualified jurors."). But the trial court's error prevented Tijerina from obtaining information she was entitled to in order to make an intelligent decision on whether to exercise her right to testify in her own behalf because she did not know whether the jurors would automatically disbelieve her testimony based on her prior felony convictions.

The burden to demonstrate harm does not rest on Tijerina or the State; it is our responsibility as an appellate court to review the record and assess harm. *See Johnson v. State,* 43 S.W.3d 1, 4–6 (Tex. Crim.App.2001); *see also Ovalle v. State,* 13 S.W.3d 774, 787 (Tex.Crim.App.2000). But we cannot predict how defense counsel would have conducted the trial differently had he not been precluded from asking the proper voir dire question at issue here. *See Gonzales,* 2 S.W.3d at 606. Thus, the character of the error was to affect Tijerina's substantial right to testify in her own defense.

The State argues in its motion for rehearing that because Tijerina did not offer any evidence of what her testimony would have been, we cannot speculate about what her testimony would have been. *See Jack v. State,* 149 S.W.3d 119, 121 n. 1 (Tex. Crim.App.2004) (noting that an appellate court may not consider factual assertions not in evidence). The State also argues in its motion for rehearing that even if we speculate about testimony Tijerina *"could have* offered," her testimony would have been legally inconsequential. [Emphasis added.] We agree that we may not speculate as to what Tijerina's testimony would have been. But the harm from the trial court's error is that Tijerina was precluded from making an intelligent decision about

whether to exercise the substantial right that she possesses to testify on her own behalf in front of an impartial jury no matter what her testimony would have been. *See Jones v. State,* 982 S.W.2d 386, 393 (Tex.Crim.App.1998) (noting that "[t]he defendant's only substantial right [in the context of jury selection] is that the jurors who do serve be qualified," not to have a particular person serve on a jury); *accord Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App.2000) (plurality opinion) (holding judge's unobjected-to comments during voir dire vitiated the impartiality of the jury and required reversal).[3] An offer of proof of Tijerina's testimony, had she testified, would have been helpful to our harm analysis, but it would have been but one relevant factor. *See Jones,* 982 S.W.2d at 394 (holding error in prohibiting voir dire questioning about defense of necessity harmful even after determining that defendant's offer of proof failed to prove defense of necessity).

Turning to the other factors, they mostly either weigh neutrally or weigh slightly against a finding of harm in this case. The testimony admitted for the jury's consideration included testimony from the police officers who stopped and eventually arrested Tijerina and from the forensic scientist who tested the substances that the officers found in the baggies. Additionally, James William Spear testified for the defense that on the day of Tijerina's arrest, he saw Tijerina loan money to Canada and saw Canada purchase drugs with that money when Tijerina was out of the room. The physical evidence admitted for the jury's consideration consisted of the confiscated drugs and the warrants for Tijerina's arrest.[4] The evidence supporting the jury's

---

3. Because *Blue* is a plurality opinion, it is not binding precedent. *See Pearson v. State,* 994 S.W.2d 176, 177 n. 3 (Tex.Crim.App.1999).

4. The jury did not hear evidence of Tijerina's previous convictions, although Spear alluded to the fact by stating, "[Tijerina] might have

verdict included Officer Howard's testimony that he saw Tijerina remove a day planner, which was later discovered to contain methamphetamine and a photocopy of Tijerina's driver's license, from a purse sitting beside her and place it in the back seat. As the State points out, there is nothing in the record to contradict the State's evidence.[5]

The jury instructions add nothing to our harm analysis one way or the other. Any instructions that the jury could not consider the fact that Tijerina did not testify are irrelevant to a harm analysis of the trial court's error in prohibiting Tijerina from learning whether any potential jurors would automatically disbelieve her testimony if she testified. The voir dire as a whole did not remedy the informational void concerning whether potential jurors would automatically disbelieve a convicted felon's testimony. The State points out that comments made to the venire members during voir dire made clear that the potential jurors were to be impartial to witnesses.[6] Although it is positive, and certainly appropriate, that the potential jurors were provided with this information, the comments made by the trial court and by the State did not help Tijerina determine whether a potential juror could apply these principles or should be challenged for cause because he or she could not apply the principles and would automatically disbelieve the testimony of a convicted felon despite hearing the court's and the State's comments. *See Pieringer v. State,* 139 S.W.3d 713, 718–19 (Tex.App.-Fort Worth 2004, no pet.). Finally, the

State mentioned in closing argument that the evidence was "uncontroverted" that Tijerina took the day planner out of her purse, but it did not otherwise emphasize the lack of testimony by Tijerina.

We recognize that when a trial court errs by prohibiting defense counsel from asking a proper commitment question, the error usually will not affect the defendant's substantial rights. *See, e.g., Burkett v. State,* 179 S.W.3d 18, 33 (Tex.App.-San Antonio 2005, no pet.) (holding error in preventing defense from asking how likely it would be that a person is guilty of DWI if he or she were arrested for DWI did not affect appellant's substantial rights where trial court and defense counsel asked potential jurors questions about burden of proof and presumption of innocence); *White v. State,* No. 07–03–00515–CR, 2005 WL 2495445, at *3 (Tex.App.-Amarillo Oct.7, 2005, pet. ref'd) (mem.op.) (not designated for publication) (holding that any error in prohibiting defense counsel from asking proper commitment question about self-defense from sexual assault did not affect appellant's substantial rights because, among other things, defense counsel was permitted to ask questions about self-defense in general). But here, the particular commitment question asked potential jurors whether they would automatically disbelieve a witness if she had been convicted of a felony, a question that if asked, could have given Tijerina a basis to exercise her right to challenge jurors for cause and would have given her information useful to determine whether to exercise her

---

did amphetamines at one time and she did get in trouble for it."

**5.** The only evidence Tijerina presented that remotely contradicted the State's evidence was Spear's testimony that he saw Canada purchase drugs and that he remembered Tijerina's purse on the passenger-side floorboard. Officer Howard testified that a second

purse lying in the passenger-side floorboard did not contain any illegal substances.

**6.** During voir dire, the trial court instructed the venire members that they had discretion to believe or not to believe the witnesses after evaluating their credibility, and the State explained that each witness was to start out with the same level of credibility.

right to testify on her own behalf. Here, whether jurors could believe the testimony of a convicted felon was an issue in the case. Here, the trial court did not ask veniremembers similar questions. *Cf. Burkett,* 179 S.W.3d at 33. And here, defense counsel was not able to obtain the same information from a different question. *Cf. White,* 2005 WL 2495445, at *3.

We conclude that although many of the *Rich* factors weigh neutrally or slightly in favor of no harm to Tijerina, in the context of the entire case against Tijerina the character of the trial court's error in prohibiting defense counsel from asking this question is such that it had a significant or injurious effect on the jury's verdict so that Tijerina's substantial rights—specifically, her rights to a fair and impartial jury and to make an intelligent decision on whether to exercise her right to testify in her own behalf—were affected. *See McMurrough v. State,* 995 S.W.2d 944, 948 (Tex.App.-Fort Worth 1999, no pet.); *accord Blue,* 41 S.W.3d at 132 (holding error during voir dire that vitiated the impartiality of the jury to be reversible error). We sustain Tijerina's first point.

### IV. Conclusion

Having sustained Tijerina's first point, we need not address her remaining points.[7] We reverse the trial court's judgment and remand the case for a new trial.

---

7. *See* Tex.R.App. P. 47.1.