IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00360-CR

No. 10-08-00361-CR

 

Sedric Lamon Smith,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 40th District Court

Ellis County, Texas

Trial Court Nos. 32887CR and
32888CR

 



MEMORANDUM  Opinion










 

            Sedric Lamon Smith was convicted by a
jury of the offense of Burglary of a Habitation (No. 10-08-00361-CR) and of the
offense of Unlawful Possession of a Firearm by a Felon (No. 10-08-00360-CR).[1]  Tex. Pen. Code Ann. §§ 30.02 & 46.04 (Vernon 2003).  
Smith pled true to one prior felony conviction for enhancement purposes, and
was sentenced to a term of seventy (70) years and ten (10) years, respectively,
in the Texas Department of Criminal Justice – Institutional Division.  Tex. Pen. Code Ann. §§ 12.42 &
12.34 (Vernon 2003).  Because we find that the State’s questions were not
improper commitment questions, that the failure to object to the trial court’s
questioning was not fundamental error and was waived, that Smith’s failure to
testify waived his objection regarding his motion to testify free from
impeachment, and that he did not establish that he was prejudiced by a Brady
violation, if any, we affirm.  We also deny Smith’s request to adopt his
co-defendant’s issues on appeal. [2]

Commitment Questions

            Smith contends that the trial court
erred by allowing the State to improperly commit the jury panel to disregard
the victim’s criminal history.  A commitment question is one that commits a
prospective juror to resolve, or to refrain from resolving, an issue a certain
way after learning a particular fact.  Standefer v. State, 59 S.W.3d
177, 179-80 (Tex. Crim. App. 2001).  It is generally improper to ask a
commitment question during voir dire because it amounts to an improper attempt
to bind a juror.  See Lydia v. State, 117 S.W.3d 902, 905 (Tex. App.—Fort
Worth 2003, pet. ref'd) (op. on remand).  However, some commitment questions
are proper.  Id.; see Standefer, 59 S.W.3d at 181-83.

For instance, counsel may ask prospective jurors
whether they can follow the law when it requires a certain type of commitment
from jurors and when the question states only the facts required to establish a
challenge for cause.  Standefer, 59 S.W.3d at 181-82 (illustrating that
counsel can ask jurors whether they can consider probation when the law
requires the jurors to be able to consider the full range of punishment); Vann
v. State, 216 S.W.3d 881, 884-85 (Tex. App.—Fort Worth 2007, no pet.). 
However, when "the law does not require the commitment, a commitment
question is invariably improper."  Standefer, 59 S.W.3d at 181.

Thus, the determination of
whether a question is an improper commitment question consists of a three-part
test: (1) is the question a commitment question; (2) could a possible answer to
the question produce a valid challenge for cause because it would show that a
juror would not follow the law; and (3) does the question only contain the
facts required to make such a challenge.  See Tijerina v. State, 202
S.W.3d 299, 302 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g). 
"[T]he purpose for prohibiting improper commitment questions by either the
State or the defendant is to ensure that the jury will listen to the evidence
with an open mind--a mind that is impartial and without bias or prejudice--and
render a verdict based upon that evidence."  Sanchez v. State, 165
S.W.3d 707, 712 (Tex. Crim. App. 2005).

Attempting to determine whether a potential juror
would automatically be biased against a witness who has a criminal history is a
commitment question.  Lydia v. State, 109 S.W.3d 495, 499 (Tex. Crim. App. 2003).  We then must decide if a possible answer to the question could
result in a challenge for cause.  A prospective juror may be properly
challenged for cause and removed "if he cannot impartially judge the
credibility of a witness."  Ladd v. State, 3 S.W.3d 547, 560 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070, 146 L. Ed. 2d 487, 120 S. Ct. 1680 (2000).  Potential jurors "must be open-minded and persuadable, with no
extreme or absolute positions regarding the credibility of any witness."  Id.  

By asking the questions, it is apparent that the
prosecution was trying to learn if any of the prospective jurors had
"extreme or absolute positions regarding the credibility of any
witness" based on the witness's potential criminal history.  Ladd,
3 S.W.3d at 560.  It is possible that the answers to these questions could lead
to a challenge for cause under article 35.16(a)(9)
based on a juror's bias.  Tex. Code
Crim. Proc. Ann. art. 35.16(a)(9) (Vernon 2006); Ladd, 3 S.W.3d
at 560 (holding that a prospective juror may be properly
challenged for cause and removed if he cannot impartially judge the credibility
of a witness); see also Rivera v. State, 82 S.W.3d 64, 66-67 (Tex.
App.—San Antonio 2002, pet. ref'd) (stating that if
a prospective juror responded to a question by stating that he would
automatically disbelieve a defendant's testimony simply because he was the
defendant, that person would be stricken for cause).  Thus, the questions meet
the second Standefer prong for proper commitment questions. See Lydia, 117 S.W.3d at 906.  Smith does not contend that the questions contained more
facts than necessary, but only that the questions were improper commitment
questions because they committed the venire to not considering whether the
victim was “a bad guy, a gangster and not a saint” in their deliberations.  We
overrule issue one.

Improper Comments by Trial Court

            Smith complains that the trial court
made comments during voir dire, which vitiated the presumption of innocence and
improperly created a bias in favor of the victim.  Smith admits he did not
object to these comments, but contends that they constitute fundamental error,
which requires no objection.  He further contends that these comments
compounded the harm from the State’s improper commitment questions, although we
have determined that they were not, in fact, improper commitment questions in
Smith’s first issue.   

            Without a contemporaneous objection,
error is generally waived, and in that instance, an appellate court may only
review fundamental error.  See Jasper
v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); Ganther v. State,
187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); Tex. R. Evid. 103(d).  Because Smith
failed to object at trial, the comments must rise to the level of fundamental
error to be preserved for appeal.  To support his fundamental-error argument,
Smith relies primarily on Blue v. State.  41 S.W.3d 129 (Tex. Crim. App. 2000).  In Blue, a plurality of the Court of Criminal Appeals held
that the trial court's comments explaining to the jury that the defendant had
attempted to enter into a plea bargain with the State and that the trial court
would have preferred a guilty plea vitiated the presumption of innocence before
the venire, constituted fundamental error and, therefore, required no
objection.  Id. at 132-33.

            The first comments by the trial court
that Smith now contends vitiates his presumption of innocence went as follows:

[I]n every criminal case, …, a defendant is
presumed to be innocent.  That is, nobody has to prove – that’s another way of
saying nobody has to prove they’re not guilty.  It’s up to the prosecution to
prove a defendant guilty, if they can.

 

And up until the time they do that, the jury is
required to presume the defendant not guilty.  And also, in conjunction with
this right not to – right to be presumed innocent and right not to have to
prove they’re innocent is the right not to have to testify in order to prove
your innocence in a criminal case.

 

This has -- I’ll visit this later again.  This
really doesn’t have any application in a civil case.  There’s no Fifth Amendment
right in civil cases, but we’ll get to that later.  In other words, one party
or the other can call each other’s witnesses and each other’s plaintiff and
defendant in order to prove their case.  But criminal cases, prosecution can’t
call the defendant as a witness.  The defendant is not required to be a witness
in the case because they’re not required to prove their innocence.  

 

To give you an example of that, suppose three
witnesses got on the witness stand that the prosecution called and each one of
those witnesses testified, I saw the defendant commit each and every element of
the indictment that’s alleged in the offense.  And I personally saw them do
that and I know they did that.  And the prosecution put on three witnesses to
say that.

 

And the defense didn’t say anything.  They didn’t
cross-examine the witnesses.  They didn’t present any witnesses of their own.  They
didn’t even call the defendant to the witness stand to say, I didn’t do
what they say I did.  In the event the defendant elects to do that, you
cannot take that as a circumstance against the defendant.  And you can’t
consider it as any evidence against the defendant.

 

And if you evaluate this prosecution’s testimony
and you look at witness number one who said I saw the defendant do all this,
you may decide, well, that witness, when he got on the stand, was obviously
intoxicated.  I’m not even sure he understood the questions.  It sounded like
the prosecution was spoon-feeding him.  The second witness, he’s absolutely
insane.  He didn’t tell the same story twice.

 

Even on direct examination, he kept wishy-washing
around.  The third witness, he has such an ax to grind against the defendant
for whatever reason that he could – you know, his testimony is just tainted
beyond belief because he just obviously really has something against the
defendant.  So I really can’t – I don’t really -- can’t really buy all the
State’s witnesses on this case.

 

But you know what, the defense didn’t put on any
witnesses.  The defense – the defendant didn’t tell me he didn’t do it.  And so
even though the witnesses for the prosecution are shaky and there’s not enough
to convince me beyond a reasonable doubt that the defendant committed the
offense, he must have because he didn’t tell me he didn’t do so.  And so, therefore,
I’m going to find him guilty.

 

That’s what you can’t do.  So if a defendant
elects not to testify, you cannot take that as a circumstance against him.  On
the other hand, if the defense elects to put on a defense and suppose we had
those same shaky witnesses from the prosecution, and the prosecution put on
these shaky witnesses and you had the same feelings about them, saying, boy, I
can’t wait to get back to the jury room because I’m going to find these guys,
or whoever the defendant is, not guilty as quick as I can because the
prosecution’s evidence is just pitiful and I couldn’t find anybody guilty
beyond a reasonable doubt on this case.

 

But the defense, for whatever reason, they decide
not to rest because they want to hit that home run.  They want that Guinness
Book of Records, jury verdict in less than two seconds, or for whatever
reason, they decide to put on a defense.  And they put on witnesses and they
put on the defendant.  And after listening to the defendant and listening
to their side of the case, even though at the first part of the case you said,
shoot, I’m going to vote not guilty, after hearing the second part of the case
and after hearing the second set, boy, after I hear that testimony, I’m
convinced beyond a reasonable doubt the defendant did commit the offense.

 

So if a defendant does not elect to testify, you
can’t take that as a circumstance against them.  If a defendant elects to
testify, then their testimony is just like any other testimony that may be
offered in the case and you can consider it in determining a verdict for guilty
or not guilty.  Okay?

 

Reporter’s Record Volume 6, pages 55-58 (emphasis
added).

            Smith’s complains of the two
italicized sections in the above section.  He contends that the trial court
improperly commented on his right to remain silent when the trial court said,
“They didn’t even call the defendant to the stand to say” and “for whatever
reason, they decide to put on a defense.  And they put on witnesses and they
put on the defendant.”  Taking the statements in the context in which they were
made, we cannot say that they constituted a comment on the Smith’s right to
remain silent or that they vitiated Smith’s presumption of innocence.  See
Jasper, 61 S.W.3d at 421 (holding that, even under the reasoning of the Blue
plurality, the trial judge's comments would not rise to the level of
fundamental error); Ganther, 187 S.W.3d at 650-51 (concluding that, even
if court of appeals were bound by the Blue plurality, the trial judge's
comments during voir dire did not rise to the level of tainting the presumption
of innocence or vitiating the impartiality of the jury).

            Smith’s other contention is that the
trial court erred in making comments that enhanced the State’s improper
commitment questions regarding the victim’s criminal history.  The trial court
clarified the State’s question to the venireperson by stating that because a
person committed a crime in the past does not give the general public
permission to commit a crime against him free from prosecution, later using an
illustration of the St. Valentine’s Day Massacre when some gangsters lined
other gangsters up on a wall and executed them and that to do so is not
justifiable, but is still murder.  No objection was lodged to the trial court
making improper comments or demonstrating bias to the jury.  Smith now contends
that the trial court’s references to gangsters imply that he is a “guilty
gangster criminal” which vitiated the presumption of innocence.  

We reject Smith's characterization of the trial
court's comments and conclude from our review of the record that none of the
court's complained-of comments rise to the level of fundamental error obviating
the need to object in the trial court.  See Jasper, 61 S.W.3d at 421; Ganther,
187 S.W.3d at 650-51.  Because Smith did not object to the trial court's
comments and because the alleged error was not fundamental error, Smith's
complaint has been waived.  See Tex.
R. App. P. 33.1(a); Jasper, 61 S.W.3d at 421.  We overrule issue
two.

Admissibility of Prior Convictions

            Smith filed a pre-trial motion to
testify free from impeachment by his prior convictions.  Under Texas Rule of
Evidence 609(a), the credibility of a witness may be attacked with a prior
felony conviction or a conviction that involved moral turpitude.  Tex. R. Evid. 609(a).  Before the
evidence is admitted, the trial court must determine that the probative value
of the evidence outweighs its prejudicial effect to the party. Id.

            In this case, we do not reach the
merits of Smith's argument because he did not testify at trial and has not
otherwise indicated what his testimony would have been.  See Jackson v.
State, 992 S.W.2d 469, 479 (Tex. Crim. App. 1999); Yanez v. State,
199 S.W.3d 293, 303 (Tex. App.—Corpus Christi 2006, pet. ref'd); Caballero
v. State, 919 S.W.2d 919, 923 (Tex. App.—Houston [14th Dist.] 1996, pet.
ref'd); Richardson v. State, 832 S.W.2d 168, 172 (Tex. App.—Waco 1992,
pet. ref'd).  To preserve error on a trial court's ruling
that permits the State to impeach a defendant with prior convictions, the
defendant must have testified.  Jackson, 992 S.W.2d at 479 (citing
Luce v. United States, 469 U.S. 38, 43, 105 S. Ct. 460, 464, 83 L. Ed. 2d
443 (1984) (holding that a defendant must actually testify to preserve error on
improper impeachment under Federal Rule of Evidence 609(a)).;
Yanez, 199 S.W.3d at 303; Caballero, 919 S.W.2d at 923.  A
reviewing court is unable to weigh the probative value of the proffered
testimony against its prejudicial effect without a factual record of the
appellant's testimony at trial.  Jackson, 992 S.W.2d at 479; Yanez,
199 S.W.3d at 303; Caballero, 919 S.W.2d at 923.  Without such a record,
there is no impeachment evidence for prior convictions and we cannot
sufficiently review for error.  See Long v. State, 245 S.W.3d 563, 573 (Tex. App.—Houston [1st Dist.] 2007, no pet.); Yanez, 199 S.W.3d at 303.  Therefore,
we overrule Smith’s third issue.

Brady Violation

            Smith’s next complaint is that the State violated the requirements of
Brady v. Maryland regarding the production of exculpatory and
impeachment evidence.  Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10
L. Ed. 2d 215 (1963).  A prosecutor has an affirmative duty to turn
over material, favorable evidence to the defense.  Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); Little v. State,
991 S.W.2d 864, 866 (Tex. Crim. App. 1999).  To determine whether a
prosecutor's actions violate a defendant's due process rights, we employ a
three-part test. We consider whether: (1) the prosecutor failed to disclose
evidence; (2) the evidence is favorable to the accused; and (3) the evidence is
material (i.e., whether a reasonable probability exists that the result of the
proceeding would have been different if the evidence had been disclosed to the
defense).  Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); Little,
991 S.W.2d at 866.  When, as here, the disclosure of evidence occurs at trial,
the issue becomes whether the tardy disclosure prejudiced Smith.  Id.  If Smith received the material in time to use it effectively at trial, his
conviction should not be reversed just because it was not disclosed as early as
it should have been.  Id.

            Smith contends there were two Brady
violations:  (1) that the State did not disclose the criminal history of the
victim in writing until the day of trial, and (2) that the name of the owner of
a firearm found on the ground near where Smith and his co-defendant were
stopped was not disclosed until near the close of the State’s case through a
witness for the State even though the State was aware of his identity
approximately four days prior to the witness’s testimony.   However, it is
apparent from the record that Smith knew of the victim’s criminal history prior
to trial and was able to question him extensively about his criminal history
during his testimony.  He did not ask for a continuance at any time to
investigate either of these issues.  The trial court ruled that Smith would be
allowed to recall any witness that had previously testified to question them
about this information, although Smith did not do so.  Further, regarding the
firearm, two firearms were located at that time, one of which was in the
vehicle and was registered to Smith’s spouse.  A loaded magazine fell out of
Smith’s lap when he got out of the vehicle after law enforcement stopped him. 
The gun owned by Smith’s spouse was located in the console of the vehicle.  The
magazine fit that firearm, and the firearm had a bullet in the chamber that
matched those in the magazine that had fallen from Smith’s lap.  Additionally,
Smith admitted to ownership of the firearm to the officer on the scene.  The
issue regarding the identity of the owner of the gun was solely related to the
other firearm recovered on the ground near where Smith’s vehicle was stopped. 
Assuming without deciding that the failure to disclose the evidence would
constitute a Brady violation, we find that Smith has made no showing
that he was prejudiced by the tardy disclosure of the information.  We overrule
Smith’s issue four.

Adoption of Issues of Co-Defendant

            Smith requested this Court to allow him to adopt his co-defendant’s
issues on appeal.  The State has objected to this.  We deny this request.  It
is the obligation of each defendant to raise all of his issues for appeal in
his brief.  Tex. R. App. P.
38.1(f) (“The brief must state concisely all issues or points presented
for review.” (emphasis added)).  Additionally, it is not the obligation of this
Court to create or restructure Smith’s argument for him to make it fit his
case, which would likely be necessary in an analysis of issues raised by his
co-defendant and not by him.

Conclusion

            We find that the State did not ask improper commitment questions to
the venire panel.  We also find that any error regarding the trial court’s
comments is not fundamental error, and because there was no objection, that
issue is waived.  We find that the trial court did not abuse its discretion in
denying Smith’s motion to testify free from impeachment by his prior
convictions.  We find that Smith did not establish that he was prejudiced by
any Brady violation.  We deny Smith’s request to adopt his
co-defendant’s issues on appeal.  We affirm the judgment.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed

Opinion delivered and
filed November 25, 2009

Do not publish 

[CRPM]









[1]
Because Smith’s two cases were heard simultaneously, he has two separate
appeals pending, and he has filed briefs with identical arguments in each
appeal, we will consider both appeals in this opinion.





[2]
Smith was tried simultaneously on both charges together with his co-defendant,
Derek Boleware, who was also convicted of the burglary but acquitted of the
possession of a firearm by a felon charge (No. 10-08-00336-CR).








>182 S.W.3d 350,
359 (Tex. Crim. App. 2005) (quoting Ex parte Welch, 981 S.W.2d 183, 184
(Tex. Crim. App. 1998)); see Chandler id. n.38.





[3]  V. J.‑A.
also cursorily summarizes evidence in terms of the factors stated in Texas
Family Code Section 263.307.  (See Br. nn. 2-3); Tex. Fam. Code Ann. § 263.307 (Vernon 2002).  V. J.‑A.
points out that we have considered those factors in review of a bench trial.  See
In re A.M.W., No. 10-05-00123-CV, 2006 Tex. App. LEXIS 1504, at *1, *16
n.3, *27 (Tex. App.—Waco Feb. 22, 2006, no pet.) (mem. op.).  Those factors
“should be considered by the [trial] court . . . in determining
whether the child’s parents are willing and able to provide the child with a
safe environment” in permanency hearings before the court.  Tex. Fam. Code Ann. § 263.307(b); see
id. § 263.306(a)(4) (Vernon 2002).  As V. J.‑A. concedes,
the trial court did not expressly instruct the jury on those factors.  “[I]t is
the court’s charge, not some other unidentified law, that measures the
sufficiency of the evidence when the opposing party fails to object to the
charge.”  Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000); accord
Sw. Bell Tel. Co., 164 S.W.3d at 619 & n.16.  V. J.‑A.
did not object to the charge.  In any case, in short, V. J.‑A.’s
argument does not comport with the evidence, and those factors do not favor
V. J.‑A.  For example, V. J.‑A. contends that there is
“no evidence” of “whether the child has been the victim of repeated harm after
the initial report and intervention by the department,” “whether the child is
fearful of living in or returning to the child’s home,” “whether there is a
history of abusive or assaultive conduct by the child’s family,” “whether there
is a history of substance abuse by the child’s family,” or “whether the child’s
family demonstrates adequate parenting skills, including providing the child
. . . with . . . minimally adequate health and nutritional care.” 
(Br. at 26-28 n.12); Tex. Fam. Code Ann.
§ 263.307(b)(4)-(5), (7)-(8), (12).  For the reasons stated below,
V. J.‑A.’s summaries do not comport with the evidence.  (See
infra pp. 5-10.)  Of those factors, the one that most favors V. J.‑A.
is perhaps “the child’s age and physical and mental vulnerabilities.”  See
Tex. Fam. Code Ann.
§ 263.307(b)(1).